**The STATE of Ohio, Appellee,**

v.

**ALI, Appellant.**

[Cite as *State v. Ali,* 154 Ohio App.3d 493, 2003-Ohio-5150.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 02 BE 46.

Decided Sept. 23, 2003.

Frank Pierce, Belmont County Prosecuting Attorney, and Thomas Ryncarz, Assistant Prosecuting Attorney, for appellee.

Christopher Berhalter, Belmont County Assistant Public Defender, for appellant.

VUKOVICH, Judge.

{¶ 1} Defendant-appellant Jamilah Ali appeals from the judgment of the Belmont County Court, Western Division, which convicted her of aggravating menacing after denying her motion to suppress statements she made to police. The first issue presented asks whether statements made to police during an arrest and resulting in an aggravating menacing charge should have been suppressed where that arrest was found to be unlawful. The second issue is whether the motion for acquittal should have been granted and whether there was sufficient evidence to support a conviction of aggravated menacing. The final

issue deals with the manifest weight of the evidence. For the following reasons, the judgment of the trial court is affirmed.

## STATEMENT OF THE CASE

{¶ 2} On the night of September 11, 2001, the local 911 dispatch received an anonymous call that a black Lincoln Towncar with Virginia license plates was at a local gas station in Belmont County with "three subjects that appeared to be dressed in some of type of Arabian garb clothing with their faces covered and masks on." It appears that all officers on duty responded, but the vehicle was no longer at the gas station. Some bystanders pointed police in the direction the vehicle had traveled. An officer then spotted the vehicle stopped in the entrance to a trailer park with the occupants out of the vehicle. The officer drove past the car and soon turned around. By that time, the car was just pulling out of the driveway and going back the way it had come. The officer initiated a traffic stop and waited for backup, which entailed approximately eight other officers.

{¶ 3} The occupants were ordered out of the vehicle by loudspeaker and instructed to get down on the ground, where they eventually were frisked and handcuffed. These occupants included appellant, her uncle, who was the driver, and her son, who was 14 years old. All three were said to be African–American individuals dressed in white robes; appellant's face was partially covered with a veil. On this notable evening of *September 11, 2001*, appellant was heard to state in various versions: "I am Maja Hadine [sic]"; "I am a warrior of Allah"; "I am at war with you and America"; and "Death to America." She then made other statements in a foreign language. Eight police officers testified at trial; one claimed that prior to being restrained, appellant also said that she was going to kill them, and one corroborated that she heard appellant say that she wanted to kill them or that she could kill them.

{¶ 4} Appellant was charged with ethnic intimidation, a felony. In a separate case, appellant was charged with resisting arrest, a second degree misdemeanor, and aggravated menacing, a first degree misdemeanor. The court dismissed the felony ethnic intimidation charge after a preliminary hearing. This preliminary hearing also proceeded on suppression grounds; however, because the court found insufficient evidence to support the charge, the court never reached the suppression issue. Yet the court stated that the transcript of the hearing could be used to support the suppression motion filed in the misdemeanor case and that it would not hold a new hearing. On October 17, 2001, the court released its decision regarding the suppression and dismissal motions filed by

both appellant and her uncle.[1] The trial court found that this was not an investigative stop or a temporary detention but was an arrest. The court concluded that there was no probable cause to arrest the defendants. Thus, the court suppressed any evidence seized. The court then explained the effect of this conclusion with respect to each defendant and offense.

{¶ 5} As to appellant, the court dismissed the resisting arrest charge because R.C. 2921.33(A) specifically contains resisting "a lawful arrest" as an element of the offense. Since the court found the arrest to be unlawful, it found that the state could not meet its burden as to this offense. However, the court refused to suppress the statements that constitute the basis for the aggravated menacing charge. The court concluded that charges for separate criminal acts occurring during the course of the arrest can still stand even if the arrest is unlawful.

{¶ 6} Appellant withdrew her jury demand, and the case proceeded to a bench trial on August 28, 2002. After the state presented its case, appellant filed a motion for acquittal, which was denied. The court found appellant guilty of aggravated menacing and sentenced her to 180 days in jail with all but eight days suspended but with credit for time served. She was placed on unsupervised probation for two years, ordered to pay $106.70 in costs, and prohibited from having unofficial contact with the Belmont County Sheriff's Department. Appellant filed timely notice of appeal.

## ASSIGNMENT OF ERROR NUMBER ONE

{¶ 7} Appellant sets forth three assignments of error, the first of which provides:

{¶ 8} "The trial court erred in not granting the appellant's motion to suppress in regard to the aggravated menacing charge."

{¶ 9} Appellant frames the issue as follows: Whether any and all comments made during an unlawful arrest should be suppressed. She points to the exclusionary rule's fruit of the poisonous tree and notes that her allegedly threatening statements would not have been made if the police had never conducted an illegal seizure.

---

1. The clerk failed to date-stamp the court's opinion and decision on suppression. The clerk also failed to date-stamp the docket and journal entry filed by the court that same day. Finally, the clerk failed to date-stamp the final order of conviction and sentence. We note this only so the trial court realizes this failure and notifies the clerk as to whether the court finds this result undesirable. The lack of a date-stamp does not affect our jurisdiction because the decisions were journalized and entered on the docket. A date-stamp is a good indication that a decision has been filed, but it is only one way to establish filing; entry in the docket is another. See, e.g., *State v. McDowell*, 150 Ohio App.3d 413, 2002-Ohio-6712, 781 N.E.2d 1057, at ¶ 7, citing *State v. Ellington* (1987), 36 Ohio App.3d 76, 78, 521 N.E.2d 504.

{¶ 10} The state notes that the exclusionary rule applies to evidence directly obtained by the illegal seizure and derivative evidence that is obtained by exploitation of the illegal search and seizure. The state argues, however, that the exclusionary rule is not a "but for" test, citing *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. Thus, it urges that it is irrelevant that she would not have made the comments but for the unlawful arrest. The state posits that the exclusionary rule is not applicable to exclude evidence of independent criminal conduct occurring during or after the arrest. The state cites cases holding that the acts constituting resisting arrest need not be suppressed merely because the arrest was unlawful, because the acts were separate, distinct, and independent acts of criminal conduct. *State v. Freeman* (Feb. 15, 2002), 2d Dist. No. 18798, 2002 WL 242527; *State v. Scimemi* (June 2, 1995), 2d Dist. No. 94–CA–58, 1995 WL 329031.

{¶ 11} In beginning our analysis, we start with the facts as found by the trial court, which are not contested. That is, it is uncontested that the surrounding of the car with guns drawn and orders to get out of the car and onto the ground constituted an unlawful arrest. All we must determine is whether statements made during an unlawful arrest should be suppressed if those words are offenses in and of themselves. It is undisputed that if appellant had drugs on her person or in her car, the drugs would be suppressed due to the illegality of the search and seizure. On the other hand, if appellant had shot and killed a police officer during her arrest, this conduct would not be suppressed based upon the illegal arrest. Thus, where a person who is being arrested commits a new crime during or after the arrest, the conduct witnessed that constitutes that new crime need not be suppressed merely because the initial arrest, which may be the motive for the new crime, turns out to be unlawful. Case law supports this holding.

{¶ 12} Some background may assist in understanding our conclusion. The Supreme Court abolished the common-law privilege to resist an unlawful arrest. *Columbus v. Fraley* (1975), 41 Ohio St.2d 173, 70 O.O.2d 335, 324 N.E.2d 735 (but leaving an exception for cases where excessive force is being used against the arrestee). That case dealt with a city ordinance, however, not the state statute defining the offense of resisting arrest; the city ordinance did not contain the element of a lawful arrest as does the state statute, R.C. 2921.33(A). Thus, resisting arrest cases brought under the state statute are still routinely thrown out where the arrest was unlawful. See, e.g., *State v. Collins* (Mar. 31, 1999), 7th Dist. No. 97CO38, 1999 WL 182505. However, such cases do not rely on the exclusionary rule. Rather, they rely on the plain language of the statute that specifically requires the arrest that was resisted to be lawful. *Id.* Likewise, the trial court in this case dismissed appellant's resisting arrest charge based upon

an unlawful arrest and the plain language of the resisting arrest statute, not based upon the exclusionary rule. Aggravated menacing, however, does not contain the element of "lawful arrest" as does the resisting arrest statute. Thus, the rationale applied in cases such as *Collins* is inapplicable.

{¶ 13} The Fourth Amendment prohibits unreasonable searches and seizures. Evidence obtained as a result of an unreasonable search and seizure, which would include an arrest without probable cause, is suppressed as representing the fruit of the poisonous tree. Generally, incriminating statements obtained during an unlawful arrest are to be suppressed. *State v. Maurer* (1984), 15 Ohio St.3d 239, 255, 15 OBR 379, 473 N.E.2d 768. However, an observation of a fresh crime committed during or after the arrest is not to be suppressed even if the arrest is unlawful. Where statements made during an arrest are themselves a new crime, the same rationale applies.

{¶ 14} In *State v. Freeman* (Feb. 15, 2002), 2d Dist. No. 18798, the defendant shot at police officers who had illegally entered a residence. The court held that the evidence obtained was the product of an independent, unlawful act. The court noted that exclusion is not a "but for" test and stated that evidence is not suppressible if that evidence is an observation of a person's reaction to an illegal seizure that constitutes a criminal offense wholly separate and apart from the offense being investigated. Id., citing 4 LaFave, Search & Seizure (1987) 458–461, Section 11.4(1).

{¶ 15} In *Akron v. Recklaw* (Jan. 30, 1991), 9th Dist. No. 14671, 1991 WL 11392, the defendant was charged with resisting arrest and assault after the police entered his house in what he argued was an illegal entry. The court held that regardless of the illegality of the entry, the defendant's conduct was still chargeable, finding as follows:

{¶ 16} "The Fourth Amendment's exclusionary rule, which [the defendant] seeks to invoke, does not sanction violence as an acceptable response to improper police conduct. The exclusionary rule only pertains to evidence obtained as a result of an unlawful search and seizure. * * * *Mapp v. Ohio* (1961), 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081]; *Wong Sun v. United States* (1963), 371 U.S. 471 [83 S.Ct. 407, 9 L.Ed.2d 441]. Further criminal acts—including assault and resisting arrest [charged through a city ordinance]—are not legitimatized by Fourth Amendment transgressions. *United States v. Bailey* (C.A.11, 1982), 691 F.2d 1009, 1016–1018, certiorari denied (1983), 461 U.S. 933 [103 S.Ct. 2098, 77 L.Ed.2d 306]." Id.

{¶ 17} Resort to "self-help" remedies must be discouraged, as they only create a lawless society. Id., citing *Fraley*, 41 Ohio St.2d at 180, 70 O.O.2d 335, 324 N.E.2d 735. See, also, *State v. Dawson* (1999), 1st Dist. Nos. C–980798 and B–

9803876, 1999 WL 567097 (holding that the convictions for assault stemmed from the defendant's actions subsequent to any illegal entry and thus are valid); *State v. Green* (July 2, 1998), 5th Dist. No. 97CAA11052, 1998 WL 429721; *Strongsville v. Waiwood* (1989), 62 Ohio App.3d 521, 528, 577 N.E.2d 63 (8th Dist.); *Middleburg Hts. v. Theiss* (1985), 28 Ohio App.3d 1, 28 OBR 9, 501 N.E.2d 1226 (8th Dist.).

{¶ 18} In accordance with the foregoing cases, we agree that evidence of aggravated menacing of a police officer occurring during or after an unlawful arrest need not be suppressed because such menacing is a separate and independent criminal act engaged in by the defendant rather than merely evidence that is already in existence at the time the unlawful arrest is made. Thus, this assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER TWO

{¶ 19} Appellant's second assignment of error contends:

{¶ 20} "The trial court erred in failing to grant the appellant's motion for a judgment of acquittal."

{¶ 21} Pursuant to Crim.R. 29(A), a trial court shall grant a motion for an acquittal only if after viewing the evidence in the light most favorable to the state, it determines that no rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. *State v. Getsy* (1998), 84 Ohio St.3d 180, 193, 702 N.E.2d 866; *State v. Dennis* (1997), 79 Ohio St.3d 421, 430, 683 N.E.2d 1096. An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard that an appellate court uses to review a sufficiency-of-the-evidence claim. *State v. Carter* (1995), 72 Ohio St.3d 545, 553, 651 N.E.2d 965. Whether the state presented sufficient evidence is a question of law dealing with adequacy. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

{¶ 22} The elements of aggravated menacing are as follows: knowingly causing another to believe that the offender will cause serious physical harm to the person or property of such person, the person's unborn, or to a member of that person's immediate family. R.C. 2903.21(A). If reasonable minds could reach different conclusions on these elements in this case, then the evidence was sufficient and the court properly denied the motion for acquittal. *Getsy,* 84 Ohio St.3d at 193, 702 N.E.2d 866; *Dennis,* 79 Ohio St.3d at 430, 683 N.E.2d 1096. See, also, *State v. Christian* (Aug. 27, 1999), 7th Dist. No. 97CA171, 1999 WL 689214.

{¶ 23} The only element thoroughly contested by appellant on appeal is the making of the requisite statement. Specifically, appellant contends that she did not say that she would kill anyone. She notes that only two officers testified that she used the word "kill." The other officers just testified that she said she was a warrior of Allah, that she had declared war on America, and/or "Death to Americans." As the trial court found, these statements would not cause another to believe that the offender will cause serious physical harm to such person and thus do not constitute the crime of aggravated menacing. Thus, appellant's argument revolves around the credibility of testimony that she threatened to kill one or more of the officers.

{¶ 24} Appellant notes that the court overruled her acquittal motion on the basis of Deputy Showalter's testimony that appellant said that she was going to kill them. She alleges that his testimony was impeached by his own police report, which failed to disclose this fact, and the testimony of other officers who did not hear this threat. To make this a sufficiency argument, rather than one of weight, she concludes that reasonable minds could come to only one conclusion; that is, she did not say that she was going to kill anyone. In other words, appellant does not specifically argue that even if Deputy Showalter was telling the truth, there was still insufficient evidence of aggravated menacing. Instead, appellant focuses on her argument that reasonable minds can only conclude that Deputy Showalter is lying or mistaken. However, Deputy Shimble testified that she too heard appellant state that she wanted to kill them or that she could kill them. Although only two out of eight officers testified that appellant mentioned the word "kill," these two officers may have been in the right place at the right time. In fact, many officers testified that appellant made statements at various times. Thus, some officers may have heard only the nonculpable statements after she threatened to kill Deputy Showalter.

{¶ 25} As noted above, appellant does not specifically focus her argument on the statutory elements of aggravated menacing but rather argues mostly that she did not make any statements about killing. However, because she generally argues sufficiency in at least one place, we shall briefly review the elements as pertinent herein; that is, knowingly causing another to believe that the offender will cause serious physical harm to that person. R.C. 2903.21(A).

{¶ 26} First, we note that the menacing statutes do not contain a time element as does, for instance, the domestic violence statute, which deals with knowingly causing the victim to believe that the offender will cause *imminent* physical harm. R.C. 2919.25(C). Rather, a conditional or future threat can constitute a violation of menacing laws. See, e.g., *State v. Lewis* (Aug. 22, 1997), 11th Dist. No. 96–P–0272, 1997 WL 589914; *State v. Collie* (1996), 108 Ohio App.3d 580, 671 N.E.2d 338; *W. Lafayette v. Deeds* (Oct. 23, 1996), 5th Dist. No.

96CA3, 1996 WL 752778. "[T]he crime of menacing can encompass a present state of fear of bodily harm and a fear of bodily harm in the future." *Deeds,* supra. See, also, *Lewis,* supra (noting that threats of potential harm are sufficient).

{¶ 27} We also note that aggravated menacing does not require the state to prove that the offender is able to carry out the threat or even that the offender intended to carry out the threat. See Legislative Serv. Comm. 1973 Note to R.C. 2903.21 (explaining that the offender merely must have a purpose to intimidate or know that his conduct would probably intimidate). See, also, *Lewis,* supra; *Collie,* supra.

{¶ 28} Finally, we point out that the sufficiency of the threat is a factual question reserved for the trier of fact. *Dayton v. Dunnigan* (1995), 103 Ohio App.3d 67, 71, 658 N.E.2d 806. In *Dunnigan,* the defendant's aggravated menacing conviction was upheld where he asked abortion clinic employees whether they had bullet proof vests and made reference to a Florida shooting at an abortion clinic. Id. (finding it irrelevant that the employees did not immediately flee and noting that the offender's reference to prior events can be used as a circumstance in considering the elements of the offense).

{¶ 29} In this case, Deputy Showalter testified that he was the first to approach appellant, who refused to comply with repeated demands to get on the ground. He testified that upon holstering his weapon in order to approach and handcuff appellant, appellant stated that she was a "warrior of Allah and declared war on America and was going to kill us." She then repeatedly yelled similar comments about war and being a soldier of Allah while her uncle yelled at her. Deputy Showalter explained that when appellant made these initial comments, she was not yet restrained, and he did not know whether she was armed. He disclosed that he felt that the comments were directed at himself and the other officers on the scene. He noted that she was looking at him when she made the threat. He concluded by stating that he personally believed his life was in danger.

{¶ 30} After viewing the evidence in the light most favorable to the state, a reasonable person could believe Deputy Showalter and find that the elements of aggravated menacing were proven beyond a reasonable doubt. This assignment of error is overruled.

### ASSIGNMENT OF ERROR NUMBER THREE

{¶ 31} Appellant's third assignment of error alleges:

{¶ 32} "The trial court's verdict was against the manifest weight of the evidence and there was insufficient evidence to support appellant's conviction."

{¶ 33} First, appellant realleges that the evidence was insufficient to support her conviction of aggravated menacing. We point to our analysis under appellant's second assignment of error, which advises why the evidence was sufficient to avoid a mid-trial acquittal. This same analysis explains why the evidence was sufficient to sustain the conviction.

{¶ 34} Next, appellant alleges that her conviction was against the manifest weight of the evidence. Weight of the evidence concerns the greater amount of credible evidence to support one side over the other. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. It indicates clearly to the trier of fact that the state is entitled to a conviction if, on weighing the evidence, the trier of fact finds that the greater amount of credible evidence sustains the issue to be established. Id. "Weight is not a question of mathematics, but depends on *its effect in inducing belief.*" (Emphasis added.) Id.

{¶ 35} The reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. The appellate court's discretionary power to grant a new trial on these grounds should be exercised only in the exceptional case where the evidence weighs heavily against the conviction. Id. Reversal on this ground does not mean that acquittal is the only correct verdict but that the appellate court is willing to sit as the thirteenth juror and reverse the trier of fact's determination of conflicting testimony. Id. at 388, 678 N.E.2d 541.

{¶ 36} This strict test acknowledges that credibility is generally the province of the trier of fact, who sits in the best position to assess the weight of the evidence and credibility of the witnesses, whose gestures, voice inflections, and demeanor the trier of fact can personally observe. *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 39 O.O.2d 366, 227 N.E.2d 212. See, also, *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. Where there are two fairly reasonable views or explanations, we do not choose which one we prefer. Rather, we defer to the trier of fact unless the evidence weighs so heavily against conviction that we are compelled to intervene.

{¶ 37} Here, a rational judge or juror could believe that appellant did not threaten to kill any officer and that Deputy Showalter was either mistaken or lying. However, one could also reasonably find that Deputy Showalter and Deputy Shimble were merely the only ones who heard appellant mention killing. The trial court did not clearly lose its way and create a manifest miscarriage of justice when it determined that appellant uttered the words testified to by Deputy Showalter and that the words caused him to believe that appellant would

504

cause him serious physical harm (particularly given the fact that these statements were made by appellant on the night of September 11, 2001). As such, we shall not intervene in this case. This assignment of error is overruled.

{¶ 38} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Judgment affirmed.

GENE DONOFRIO and DEGENARO, JJ., concur.