OPINION
{¶ 1} Appellant Patrick Dobrovich was convicted on five counts of telephone harassment and was sentenced to 30 days in jail on each count. Appellant contends that the trial court violated the best evidence rule by admitting a copy of an answering machine recording rather than requiring the original answering machine recording to be produced. Appellant also argues that the conviction is against the manifest weight of the evidence. The record shows that Appellant did not object to the introduction of the cassette tape and raised no questions at trial concerning the authenticity of the tape. The record further reflects that the testimony of the victim, of Appellant, and the content of the cassette tape provide ample proof of Appellant's guilt. For these and other reasons more fully explained below, we affirm the judgment of the Belmont County Court, Eastern Division.
 {¶ 2} On August 4, 2003, Michelle Ritz ("Ritz") filed a complaint against Appellant alleging ten counts of telephone harassment. Each count constituted a first degree misdemeanor in violation of R.C. § 2917.21(B), which states:
 {¶ 3} "(B) No person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person."
 {¶ 4} The case went to bench trial on January 29, 2004. Ritz and Appellant both testified at trial. The state also played a cassette tape that was a copy of certain phone messages that had been left on Ritz's telephone answering machine. Appellant's counsel did not object to the introduction of this tape, and Appellant later testified that it was his voice on the tape.
 {¶ 5} The evidence at trial indicated that Ritz and Appellant had been romantically involved and were living together prior to April of 2003. In April, Ritz told Appellant to move out, which he did. Between April and May 2003, Ritz testified that Appellant made numerous phone calls to her residence, some of which were recorded by her telephone answering machine. Many of these messages contained vulgar and threatening language. Ritz also testified that she told Appellant between fifty and one hundred times to stop calling her on the phone.
 {¶ 6} On January 29, 2004, the court convicted Appellant of five counts of telephone harassment, and the other five counts were dismissed. The court sentenced Appellant to 30 days in jail on each count, with all but ten days suspended; a $200 fine; court costs; and two years of probation. This timely appeal was filed on February 10, 2004.
 {¶ 7} Appellant asserts two assignments of error, which will be presented in reverse order. Appellant's second assignment of error asserts:
 {¶ 8} "Introduction of the edited tapes violated the best evidence rule and the court erred by admitting this improper evidence."
 {¶ 9} Appellant contends that the trial court permitted the copied cassette tape to be admitted into evidence over counsel's objection, in violation of Evid.R. 1003. Before addressing this alleged error, we must note that there is no indication in the trial transcript that Appellant's counsel objected to the introduction of this tape into evidence. Evid.R. 103(A)(1) states:
 {¶ 10} "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
 {¶ 11} "(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent from the context;"
 {¶ 12} Without a proper objection at trial, such evidentiary disputes are deemed to be waived. In re Stacey S. (1999), 136 Ohio App.3d 503,516, 737 N.E.2d 92.
 {¶ 13} Even if Appellant did not waive the issue for appeal, it does not appear that the trial court erred in allowing the tape to be admitted as evidence. Appellant's reliance on the "best evidence rule" is misplaced. It is true that Evid.R. 1002, known as the "best evidence rule," states: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio."
 {¶ 14} This rule has been generally abrogated, though, by Evid.R. 1003, which states: "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."
 {¶ 15} The Ohio Supreme Court has held that: "[t]he party seeking to exclude a duplicate has the burden of demonstrating that the duplicate should be excluded." State v. Tibbetts (2001), 92 Ohio St.3d 146, 160,749 N.E.2d 226. The party seeking to exclude a duplicate cannot rely on mere speculation as to its authenticity. State v. Easter (1991),75 Ohio App.3d 22, 27, 598 N.E.2d 845. Furthermore, "the decision to admit duplicates, in lieu of originals, is one that is left to the sound discretion of the trial court." Id.
 {¶ 16} Where the opponent raises a genuine issue as to the trustworthiness of the duplicate, the trial court must determine whether testimony authenticating the duplicate is sufficient to establish that the document is what it purports to be. Id. at 26-27, 598 N.E.2d 845. The trial court's ruling on the sufficiency of authentication evidence is also reviewed for abuse of discretion. Id.
 {¶ 17} Appellant points to no evidence that the contents of the original recording tape were altered or edited prior to the moment when Ritz transferred the messages to the duplicate cassette tape. Ritz testified that she received many phone calls from Appellant during April and May of 2003. (Tr., p. 6.) She testified that she told him repeatedly, fifty to one hundred times, to stop calling. (Tr., p. 7.) She testified that Appellant left the messages on her answering machine, and that she used a tape player to transfer the messages from her answering machine to the cassette tape. (Tr., p. 7.) She testified that these messages contained Appellant's voice, which she was familiar with, and were made during April and May of 2003. (Tr., pp. 8-10.) Ritz also testified that the cassette tape was a fair and accurate representation of what was on her answering machine. (Tr., pp. 8-10.)
 {¶ 18} In addition, Appellant admitted it was his voice on the tape. (Tr., pp. 21, 24, 26.) He admitted making the phone calls for the purpose of getting some of his furniture back. (Tr., pp. 21, 24.) Appellant also admitted being intoxicated at the time he made some of the calls. (Tr., p. 30.)
 {¶ 19} Appellant did make one comment indicating that the answering machine messages could possibly have been from an earlier point in his relationship with Ritz, from sometime in 2001. (Tr., p. 25.) Ritz testified that her answering machine did not record the exact date of each call, but rather, only recorded the time of day and the day of week, such as Monday. (Tr., p. 7.) The transcript of the cassette tape, and the tape itself do not indicate the exact date of each message. Nevertheless, Ritz established, through her own testimony, that the calls were made in April and May of 2003.
 {¶ 20} Based on the testimony of both the victim and Appellant, it does not appear that the trial court abused its discretion in admitting the duplicated answering machine messages into evidence. Appellant's second assignment of error is therefore overruled.
 {¶ 21} Appellant's first assignment of error asserts:
 {¶ 22} "The defendant was found guilty against the manifest weight of the evidence."
 {¶ 23} Appellant contends that the state did not prove the mens rea, or criminal intent, element of the crime, namely, that he had thepurpose to commit telephone harassment. Criminal intent can be inferred from the presence, companionship and conduct of a criminal defendant both before and after the offense is committed. State v. Pruett (1971),28 Ohio App.2d 29, 34, 57 O.O.2d 38, 273 N.E.2d 884. Criminal intent may be proven by either direct or circumstantial evidence. State v.Mootispaw (1996), 110 Ohio App.3d 566, 570, 674 N.E.2d 1222.
 {¶ 24} Appellant contends that the weight of the evidence does not support the conclusion that he had the requisite criminal intent. Weight of the evidence concerns the greater amount of credible evidence to support one side over the other. State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. "Weight is not a question of mathematics, but depends on its effect in inducing belief." Id.
 {¶ 25} Questions concerning the weight of the evidence are generally left to the determination of the trier of fact, who sits in the best position to assess the evidence and credibility of the witnesses, including the gestures, voice inflections, and demeanor of each witness.State v. DeHass (1967), 10 Ohio St.2d 230, 231, 39 O.O.2d 366,227 N.E.2d 212. "Where there are two fairly reasonable views or explanations, we do not choose which one we prefer. Rather, we defer to the trier of fact unless the evidence weighs so heavily against conviction that we are compelled to intervene." State v. Ali,154 Ohio App.3d 493, 2003-Ohio-5150, 797 N.E.2d 1019, ¶ 36.
 {¶ 26} In addressing a challenge to the manifest weight of the evidence in a criminal case, the reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. The appellate court's discretionary power to grant a new trial on these grounds should be exercised only in the exceptional case where the evidence weighs heavily against the conviction. Id. Reversal on this ground does not mean that acquittal is the only correct verdict but that the appellate court is willing to sit as the thirteenth juror and reverse the trier of fact's determination of conflicting testimony. Id. at 388, 678 N.E.2d 541.
 {¶ 27} The three main sources of evidence in this case (the victim's testimony, the cassette tape, and Appellant's testimony) all reflect that Appellant made the phone calls, made them repeatedly, used foul and threatening language, and that Appellant was apparently intoxicated when he made some of the calls. The victim testified that she told Appellant many times not to call her, although Appellant disputed this testimony. The state was not required to prove that all the calls were of a threatening nature, but rather, that Appellant had the purpose to abuse, threaten or harass the victim by making the calls. Appellant did mention in passing that the calls might have been from an earlier period in his relationship with Ritz, and the cassette tape itself did not identify the exact date of the calls. Nevertheless, Ritz testified very clearly that the calls occurred in April and May of 2003, and that she and Appellant had just broken up their relationship at that time. Based on the evidence presented, there is no indication that the trier of fact lost its way in concluding that Appellant had committed the crime of telephone harassment. Appellant's first assignment of error is, therefore, overruled.
 {¶ 28} Based on the previous analysis, the judgment of the Belmont County Court, Eastern Division, is affirmed in full.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.