OPINION
{¶ 1} Defendant-appellant Marsha Kelso appeals her conviction and sentence in the Holmes County Court on one count of menacing, a misdemeanor of the fourth degree, in violation of R.C. 2903.22
(A). The plaintiff appellee is the State of Ohio.
 {¶ 2} On or about January 28, 2004, appellant was working at Wendy's Restaurant in Millersburg, Ohio. Appellant worked with a 17 year old by the name of Jessica Haven. Ms. Haven was frying hamburgers and appellant was assembling the sandwiches. There was a disagreement between appellant and Ms. Haven about appellant not speaking loudly enough to Ms. Haven for Ms. Haven to understand to make the proper number of hamburger patties for appellant to put into the sandwiches. Appellant was confronted by the manager, Amanda Raber, for assembling the sandwiches together in an improper fashion, as well as the allegation made by Ms. Haven that appellant was not calling orders loudly enough. After being asked to leave work by the manager, appellant stated that she would be back for Ms. Haven and the manager. Ms. Haven testified the appellant then stated she would "kick my ass right there." The complaining witness testified that the remarks were made in a loud, aggressive manner. Ms. Haven further testified that she felt threatened by the remarks. Ms. Haven further testified that appellant was waiting for her in the parking lot of the restaurant at the end of Ms. Haven's shift, nearly 1½ hours after the incident occurred inside the restaurant. Ms. Haven was upset by appellant's appearance in the parking lot and stopped at the back drive-thru window to report that appellant had returned to the restaurant. Appellant then followed Ms. Haven home. The Ms. Haven's testimony was corroborated by the store manager and two co-workers.
 {¶ 3} Appellant testified that she told the complaining witness that she "ought to whip her butt." Appellant claimed that she made this statement in response to the complaining witness directing a racial slur toward appellant. In her handwritten statement to the police taken the night of the incident, appellant stated that she "got up in her [the complaining witnesses] face." However, she did not mean the words to be a threat. Further, appellant denied that she returned to the restaurant or followed the complaining witness home after work.
 {¶ 4} The case was tried without a jury before the Holmes County Court on April 16, 2004. The trial judge found appellant guilty. Appellant was sentenced to 30 days in jail, all of which were suspended, $150 and court costs, and 3 years probation with the following terms: the defendant cannot go to Wendy's, have any contact with the witnesses, attend Life Skills, and make restitution for attorney's fees.
 {¶ 5} Appellant filed a timely notice of appeal and raises the following two assignments of error for our consideration:
 {¶ 6} "I. The trial court erred when it found defendant guilty of the crime of menacing when it was against the manifest weight of the evidence.
 {¶ 7} "II. The performance of appellant's trial counsel was deficient to the extent that the appellant received ineffective assistance of counsel."
 I. {¶ 8} In her First Assignment of Error, appellant maintains that her conviction for Menacing is against the weight of the evidence. Specifically, the appellant asserts a failure of evidence on the threat element of that offense. We disagree.
 {¶ 9} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 10} Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 11} In State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id., paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id., paragraph four of the syllabus; State v. Miller (2002),96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38, 775 N.E.2d 498.
 {¶ 12} In the complaint in the case at bar, appellant was charged with Menacing in violation of R.C. 2903.22(A), which states:
 {¶ 13} "(A) No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."
 {¶ 14} To find the appellant guilty of Menacing as charged, the trier of fact would have to find that appellant knowingly caused the complaining witness to believe that the appellant will cause physical harm to the complaining witness.
 {¶ 15} R.C. 2901.22 defines "knowingly" as follows:
 {¶ 16} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 17} R.C. 2901.01(A) (3) defines "physical harm" as follows:
 {¶ 18} "(3) `Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration."
 {¶ 19} The crime of menacing can encompass a present state of fear of bodily harm and a fear of bodily harm in the future. Village of W.Lafayette v. Deeds (Oct. 23, 1996), 5th Dist. No. 96CA3; State v. Ali (2003), 154 Ohio App.3d 493, 501-2; 2003-Ohio-5150 at ¶ 26,797 N.E.2d 1019, 1025-25. "Generally, under the menacing laws, the state does not need to prove the offender's ability to carry out the threat or any movement toward carrying it out. State v. Schwartz (1991),77 Ohio App.3d 484, 602 N.E.2d 671; State v. Roberts (Sept. 26, 1990), Hamilton App. No. C-890639, unreported, 1990 WL 410625; Committee Comment to R.C. 2903.22(A)." State v. Collie (1996), 108 Ohio App.3d 580, 582,671 N.E.2d 338; State v. Lewis (Aug. 22, 1997), 11th Dist N. 96-P-0272;State v. Ali, supra. The sufficiency of the threat is a factual question reserved for the trier of fact. Dayton v. Dunnigan (1995),103 Ohio App.3d 67, 71, 658 N.E.2d 806.
 {¶ 20} In the case at bar, the complaining witness testified that appellant, after being asked to leave work by the manager, stated that she, the appellant, would be back for her and the manager. (T. at 6). The appellant then stated that she would "kick my ass right there." (Id. at 7; 15-16). The complaining witnesses testified that the remarks were made in a loud, aggressive manner. (Id. at 6-7). Ms. Haven further testified that she felt threatened by the remarks. (Id. at 7). Ms. Haven further testified that appellant was waiting for her in the parking lot at the end of Ms. Haven's shift, nearly one to one and one-half hours after the incident inside the restaurant. (Id. at 9; 18). Ms. Haven was upset by the appellant's appearance in the parking lot and stopped at the back drive-through window to report that appellant had returned to the restaurant. (Id. at 9). Appellant followed Ms. Haven home. (Id. at 18). The Ms. Haven's testimony was corroborated by the store manager (T. at 44-46) and two (2) co-workers. (Id. at 22-24; 28; 30; 34-35).
 {¶ 21} Appellant testified that she told the complaining witness that she "ought to whip your butt." (T. at 76-78). Appellant claimed that she made this statement in response to the complaining witness directing a racial slur toward appellant. (Id.). In her handwritten statement to the police taken the night of the incident, appellant stated that she "got up in her [the complaining witness'] face." (Id. at 86). However, she did not mean the words to be a threat. (Id. at 79). Further, appellant denied that she returned to the restaurant or followed the complaining witness home after work. (Id. at 78; 83).
 {¶ 22} Mere words are generally insufficient to justify the use of violence. See, e.g., State v. Shane (1992), 63 Ohio St.3d 630,590 N.E.2d 272. In any event, sufficient time to cool off elapsed in the one hour to one and one half hours between the incident and appellant's return to the restaurant. Although, appellant presented her version of the events that led up to the filing of criminal charges to contradict the State's inference that she knowingly caused another to believe that the offender will cause physical harm to the person the trier of fact was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 23} Where there is a contradiction between two accounts of an incident, we note that the trial court, as the trier of fact, is in the best position to assess the witnesses' credibility. See State v. Martin
(1986), 21 Ohio St. 3d 91, 95, 488 N.E.2d 166. Under the facts of this case, the trial court could find that appellant was aware that her conduct could probably cause Ms. Haven to believe that she would cause her physical harm. Therefore, after reviewing the record, we find that the trial court did not lose its way in finding appellant guilty of menacing.
 {¶ 24} We conclude the trial court, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant engaged in knowingly causing another to believe that the offender will cause physical harm to the person. Accordingly, appellant's conviction for menacing was not against the manifest weight of the evidence.
 {¶ 25} Appellant's First Assignment of Error is overruled.
 II. {¶ 26} In her Second Assignment of Error, appellant argues that she was denied effective assistance of trial counsel.
 {¶ 27} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 28} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 29} In order to warrant a reversal, the appellant must additionally show she was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 {¶ 30} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 31} The first area in which appellant claims she was denied effective assistance of counsel is counsel's failure to attack the sufficiency of the complaint.
 {¶ 32} The purpose of a criminal complaint is to inform the accused of the crime for which she is charged. State v. Villagomez (1974),44 Ohio App.2d 209, 211, 337 N.E.2d 167. The complaint forms the essential basis of the court's jurisdiction and the subsequent trial and judgment. Id.
 {¶ 33} Crim.R. 3 defines a criminal complaint as follows:
 {¶ 34} "[A] written statement of the essential facts constituting the offense charged. It shall also state the numerical designation of the applicable statute or ordinance. It shall be made upon oath before any person authorized by law to administer oaths."
 {¶ 35} A complaint is deemed sufficient if it charges an offense in the words of the statute or ordinance upon which it is based. State v.Riffle, Pickaway App. No. 00CA041, 2001-Ohio-2415 (citation omitted). In determining the sufficiency of a complaint, the Ohio Supreme Court stated that "[i]t is not necessary that the affidavit be executed by one who observed the commission of the offense. It is sufficient if such person has reasonable grounds to believe that the accused has committed the crime." Sopko v. Maxwell (1965), 3 Ohio St.2d 123, 124, 209 N.E.2d 201;State v. Maxwell (1995), 102 Ohio App.3d 1, 656 N.E.2d 954, State v.Hawk, 3rd Dist. No. 1-03-54, 2004-Ohio-922.
 {¶ 36} The complaint/affidavit in the case at bar specifically set forth the essential elements constituting the charged offenses, and designated the applicable statutes for the offenses charged against appellant. The officer attested under oath to the affidavit, signed it in front of a notary, and the affidavit was properly notarized pursuant to Crim. R. 3.
 {¶ 37} Crim. R. 3 was complied with in the case at bar. Appellant has not demonstrated any prejudice in the preparation of her defense, nor that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.
 {¶ 38} Therefore counsel was not ineffective in failing to challenge the complaint in appellant's case.
 {¶ 39} The second area in which appellant alleges that her trial was counsel was ineffective was in counsel's failure to question the State's witnesses concerning the complaining witnesses' use of a racial slur directed at appellant.
 {¶ 40} "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. See Strickland, 466 U.S., at 690,104 S.Ct. 2052 (counsel is `strongly presumed' to make decisions in the exercise of professional judgment). That presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court `may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.' Massaro v. United States, 538 U.S. 500, 505,123 S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. See Bell, supra, at 702, 122 S.Ct. 1843; Kimmelmanv. Morrison, 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); Strickland, supra, at 689, 104 S.Ct. 2052; United States v. Cronic,466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)." Yarborough v.Gentry (2003), 540 U.S. 1, 8, 124 S.Ct. 1, 6.
 {¶ 41} In the case at bar, counsel did inquire of the appellant as to the complaining witness' use of the racial slur. (T. at 73; 75; 76; 79; 84; 86). Further, appellant's case was tried to the court.
 {¶ 42} As the evidence was before the trier of fact, appellant has failed to demonstrate that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.
 {¶ 43} The final area in which appellant alleges that her trial counsel was ineffective was in counsel's failure to move for a Crim. R. 29 motion for acquittal at the conclusion of the State's case and at the conclusion of her case.
 {¶ 44} "The purpose of a motion for judgment of acquittal is to test the sufficiency of the evidence and, where the evidence is insufficient, to take the case from the jury. In the non-jury trial, however, the defendant's plea of not guilty serves as a motion for judgment of acquittal, and obviates the necessity of renewing a Crim. R. 29 motion at the close of all the evidence. See the following cases decided under the analogous Fed.R.Crim.P. 29: Hall v. United States (C.A. 5, 1961),286 F.2d 676, 677, certiorari denied, 366 U.S. 910, 81 S.Ct. 1087,6 L.Ed.2d 236; United States v. Besase (C.A. 6, 1967), 373 F.2d 120,121; United States v. Pitts (C.A. 5, 1970), 428 F.2d 534, 535, certiorari denied, 400 U.S. 910, 91 S.Ct. 154, 27 L.Ed.2d 149. See also, 8A Moore's Federal Practice, Paragraphs 29.01 Et seq." Dayton v. Rogers (1979),60 Ohio St.2d 162, 163, 398 N.E.2d 781, overruled on other grounds, Statev. Lassaro (1996), 76 Ohio St.3d 261, 266, 667 N.E.2d 384. The rule has no application in a case tried to the court. Id.
 {¶ 45} Accordingly, appellant's Second Assignment of Error is overruled.
 {¶ 46} For the foregoing reasons, the judgment of the Holmes County Court is affirmed.
Gwin, J., Boggins, P.J., and Hoffman, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Holmes County Court is affirmed. Costs to appellant.