[Cite as *State v. Applegate*, 2014-Ohio-1697.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO/CITY OF MASON, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2013-08-070 |
| | : | O P I N I O N<br>4/21/2014 |
| - vs - | : | |
| | : | |
| EARL M. APPLEGATE, | : | |
| Defendant-Appellant. | : | |


APPEAL FROM MASON MUNICIPAL COURT
Case No. 12CRB00324


Bethany S. Bennett, Mason City Prosecutor, 5950 Mason Montgomery Road, Mason, Ohio 45040, for plaintiff-appellee

Fowler, Demos & Stueve, William G. Fowler, 12 West South Street, Lebanon, Ohio 45036, for defendant-appellant


**M. POWELL, J.**

{¶ 1} Defendant-appellant, Earl Applegate, appeals his conviction in the Mason Municipal Court for aggravated menacing and aggravated trespassing.

{¶ 2} Appellant was charged following an altercation on May 3, 2012, in Harbor Freight, a hardware store in Mason, Ohio, during which he argued with Brittany Paul, the store supervisor, and Dawn Potts, a store trainee, called Paul a liar, refused to leave the store when asked to do so, and threatened to go to his vehicle and come back with an

assault rifle and "clean house." Until that day, appellant was a polite, friendly, and regular customer of Harbor Freight.

{¶ 3} The record reflects that several weeks before the May 3, 2012 incident, appellant came to the store to return an item but was unsuccessful. Appellant eventually left the store only to return to tell Paul and the store employees he had been so angry, he had thought about coming back to the store with an assault rifle and "clean house." Appellant apologized for those thoughts and left the store. Thereafter, and until May 3, 2012, appellant shopped at the store several times without incident.

{¶ 4} The case was tried to the bench. On June 27, 2013, the trial court found appellant guilty of aggravated menacing and aggravated trespassing, as charged.[1]

{¶ 5} Appellant appeals, raising one assignment of error:

{¶ 6} THE TRIAL COURT'S FINDING OF GUILT FOR THE OFFENSES OF AGGRAVATED MENACING AND AGGRAVATED TRESPASS ARE IN CONTRADICTION TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 7} Appellant argues his conviction for aggravated menacing and aggravated trespassing is against the manifest weight of the evidence because the record indicates that until Potts, the store trainee, threatened appellant, neither Potts nor the other employees were in fear of appellant, and appellant's behavior was not threatening. Appellant also asserts the employees did not order him to leave, but rather, asked him to remain in the store and shop.

{¶ 8} When considering whether a judgment is against the manifest weight of the evidence in a bench trial, an appellate court will not reverse a conviction where the trial court could reasonably conclude from substantial evidence that the state has proved the offense

---

1. Appellant was also charged with disorderly conduct following the May 3, 2012 incident. However, the trial court dismissed that charge after finding it was a lesser included offense of aggravated menacing.

beyond a reasonable doubt. *State v. Cooper*, 12th Dist. Butler No. CA2010-05-113, 2011-Ohio-1630, ¶ 7; *State v. Godby*, 12th Dist. Butler No. CA2005-03-056, 2006-Ohio-205, ¶ 4. In conducting its review, the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the court "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Godby* at ¶ 5, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *Id.*

{¶ 9} Appellant was convicted of aggravated menacing in violation of Mason Municipal Code 537.05, which states, in relevant part: "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person." Mason Municipal Code 537.05 is identical to R.C. 2903.21(A). Under Mason Municipal Code 501.08(b), a person acts "knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Mason Municipal Code 501.08(b) is identical to R.C. 2901.22(B).

{¶ 10} The crime of menacing can involve a present state of fear of bodily harm and a fear of bodily harm in the future. *State v. Russell*, 12th Dist. Warren No. CA2011-06-058, 2012-Ohio-1127, ¶ 12, citing *State v. Ali,* 154 Ohio App.3d 493, 2003-Ohio-5150, ¶ 26. Aggravated menacing does not require the state to prove that the offender is able to carry out the threat or even that the offender intended to carry out the threat. *Russell* at ¶ 12. Rather, the offender merely must have a purpose to intimidate or know that his conduct would probably intimidate. *Id.* at ¶ 13. Whether a threat sufficient to support a charge of

aggravated menacing has been made is a factual question reserved for the trier of fact. *Id.*, citing *Dayton v. Dunnigan*, 103 Ohio App.3d 67, 71 (2d Dist.1995).

{¶ 11} Appellant was also convicted of aggravated trespassing in violation of Mason Municipal Code 541.051, which states: "No person shall enter or remain on the land or premises of another with purpose to commit on that land or those premises a misdemeanor, the elements of which involve causing physical harm to another person or causing another person to believe that the offender will cause physical harm to him." Mason Municipal Code 541.051 is identical to R.C. 2911.211(A).

{¶ 12} At the outset, we note that appellant correctly asserts that certain facts set forth and relied upon by the trial court in finding him guilty of both offenses differ from the testimony at trial. Nonetheless, upon a thorough review of the record, we find that appellant's conviction for aggravated menacing and aggravated trespassing is not against the manifest weight of the evidence.

{¶ 13} With regard to the earlier incident, both appellant and Paul, the store supervisor, testified that after appellant unsuccessfully tried to return a tape measure, appellant left the store only to return to tell Paul and the store employees he had been so angry, he had thought about coming back to the store with an assault rifle and "clean house" or "shoot this whole place up." In testifying about this incident, appellant stated he "can be a little bit comedic and [he] like[s] Perry Mason."

{¶ 14} With regard to the May 3, 2012 incident, testimony at trial shows that appellant came into the store, introduced himself to Potts who was then being trained on the cash register by Paul, and chatted a few minutes. Appellant then started talking to Paul about his previous attempt to return the tape measure. When Paul once again refused to take the item back (which appellant did not have with him), appellant became upset and called her a liar. Appellant testified that in the course of his argument with Paul, he reminded her of their

earlier conversation, including his comment about the assault rifle and his subsequent apology to her and other employees.

{¶ 15} Eventually, Potts became involved in the argument between appellant and Paul. As the argument continued with Potts and started to escalate, appellant either threatened to write a letter to the Harbor Freight's owners or asked Paul whether she was going to call the police. Potts retorted there was no need to do so as she would call her husband who was nearby. Appellant testified that as a result of being beaten in 1985 with a fire axe, he took Potts' statement about her husband as a threat. Angry, appellant replied that he would get an AK-47 from his truck and "clean house."

{¶ 16} Potts testified that appellant's AK-47 comment made her fearful for her safety as she did not know whether appellant was joking or had a weapon. Likewise, Kevin McLean, a store employee, and Paul testified that appellant's AK-47 comment scared them. McLean testified he did not know whether appellant was serious, and in fact, appellant "seem[ed] like" he meant it.

{¶ 17} Potts testified that following appellant's AK-47 comment, she told him to leave the store if he was not going to purchase something. Appellant did neither. On cross-examination, appellant admitted he did not leave the store after Potts asked him to do so because he believed only the store supervisor had the authority to ask a customer to leave. The record indicates that throughout the altercation between appellant and the store employees, and at least once after appellant's AK-47 comment, appellant was asked to leave the store. It was not until Paul called the police that appellant eventually left the store.

{¶ 18} The record also shows that following appellant's AK-47 comment, the altercation became so heated between appellant and several employees that store employee Awni Bababnth removed his uniform shirt and approached appellant.[2] Soon after, McLean

2. There is a discrepancy between the way Mr. Bababnth spelled his last name at trial ("Bababnth") and the

stepped in between appellant and Bababnth. Paul called the police and appellant left the store.[3]

{¶ 19} Testimony at trial clearly shows that during an altercation with various employees, appellant threatened at least once to retrieve an assault rifle from his truck and "clean house"; following appellant's threat, several employees feared for their life; at least two employees, Potts and McLean, believed appellant to be in earnest and capable of acting; and unlike during the previous incident, appellant never apologized for his conduct and thoughts on May 3, 2012. Appellant admitted at trial that his AK-47 comment was threatening but testified he was not trying to scare Potts. Rather, his comment was intended "to neutralize" the situation and prevent Potts "from making a situation into a bad situation."

{¶ 20} We recognize that appellant's testimony conflicted with the employees' testimony as to whether appellant (1) became agitated and upset (and remained so until he left the store) right before he called Paul a liar, or not until Potts stated she would call her husband; (2) was yelling during the altercation; and (3) threatened to use an AK-47 once or multiple times. However, it is well-established that when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony. *See State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529. Further, "[t]he decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Rhines*, 2d Dist. Montgomery No. 23486, 2010-Ohio-3117, ¶ 39 (upholding a conviction for aggravated menacing following a bench trial).

---

spelling used in the subpoenas and by the trial court in its decision ("Dabeabneh"). We choose to use the way Mr. Bababnth spelled it at trial.

3. Appellant was pulled over and arrested shortly after he left the store. No weapons were found in his vehicle. He was cooperative with the police and at the jail.

{¶ 21} After a careful review of the record, we find that the trial court could reasonably conclude that appellant knowingly caused Potts and other employees to believe he was going to cause serious physical harm to them. The trial court did not lose its way and create such a manifest miscarriage of justice that the conviction must be reversed. We therefore find that appellant's conviction for aggravated menacing is not against the manifest weight of the evidence.

{¶ 22} With regard to appellant's conviction for aggravated trespassing, the record clearly shows appellant was asked several times, and at least once after his AK-47 comment, to either leave the store or leave the store if he was not going to purchase something. Appellant did neither. Appellant was upset and angry during the altercation, and was so, if not before, at the very least after Potts told him she would call her husband. Following appellant's AK-47 comment, several employees feared for their life. Appellant's comment and behavior caused several employees to believe appellant would cause them serious physical harm, and his continued presence on the premises after being asked to leave the store perpetuated the fear and apprehension his comment and behavior had created.

{¶ 23} Accordingly, we find the trial court could reasonably conclude that the state proved the offense of aggravated trespassing beyond a reasonable doubt. *See Cooper*, 2011-Ohio-1630. The trial court did not lose its way and create such a manifest miscarriage of justice that the conviction must be reversed. Appellant's conviction for aggravated trespassing is therefore not against the manifest weight of the evidence.

{¶ 24} Appellant's assignment of error is overruled.

{¶ 25} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.