[Cite as *State v. Henry*, 2017-Ohio-7505.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 16 JE 0010 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| ELVIS R. HENRY, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from the Court of
Common Pleas of Jefferson County,
Ohio
Case No. 15-CR-120(A)

JUDGMENT:      Affirmed.

APPEARANCES:

For Plaintiff-Appellee:      Atty. Jane M. Hanlin,
Jefferson County Prosecutor
Atty. Samuel A. Pate
Assistant Prosecuting Attorney
16001 State Route 7
Steubenville, Ohio 43952

For Defendant-Appellant:      Atty. Donald Gallick
Donald Gallick LLC
190 North Union Street #102
Akron, Ohio 44304

JUDGES:

Hon. Carol Ann Robb
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: August 31, 2017

ROBB, P.J.

{¶1} Defendant-Appellant Elvis Henry appeals from the verdicts entered in Jefferson County Common Pleas Court for possession of cocaine in excess of 100 grams and having a weapon while under disability. Four assignments of error are raised in this appeal. The first three assignments of error address whether cocaine is required to be weighed quantitatively. A quantitative measurement would reveal how much of the substance contains the pure drug and how much is filler. The Bureau of Criminal Investigation (BCI) tested and weighed the drug, but the weight of the drug included the filler. Appellant argues the weight of the drug should not include filler and since there was no evidence of the weight of only the cocaine, the state did not establish its burden of production for the possession charge. Similarly, using the same argument, Appellant also argues the possession conviction is against the manifest weight of the evidence. Appellant also asserts the trial court erred when it failed to permit the jury to hear the BCI expert's testimony that could have challenged the weight of the drug because there was no quantitative measurement. In the final assignment of error, Appellant assets he was denied a fair trial based on the doctrine of cumulative error.

{¶2} Due to the Ohio Supreme Court's decision in *State v. Gonzales,* the first three assignments of error are meritless. In *Gonzales*, the Court held, "the entire 'compound, mixture, preparation, or substance,' including any fillers that are part of the usable drug, must be considered for the purpose of determining the appropriate penalty for cocaine possession under R.C. 2925.11(C)." *State v. Gonzales*, __ Ohio St.3d __, 2017-Ohio-777, __ N.E.3d __, ¶ 3. The fourth assignment of error is also meritless; there were not multiple errors and thus, the doctrine of cumulative error is inapplicable. Consequently, for those reasons and the reasons expressed below, the conviction is affirmed.

Statement of the Facts and Case

{¶3} On July 28, 2015, Officer Hanlin from the Steubenville Police Department was contacted by a longtime informant, S.P.; she informed the officer she had been purchasing cocaine or crack cocaine from "E" through an "unwitting

source." Tr. 49-50. An "unwitting source" is a middleman who has developed rapport with the seller. Tr. 50. The person wishing to buy the drugs gives money to the middleman, the middleman purchases the drugs and then gives the drugs to the purchaser; the purchaser does not have actual contract with the seller. Tr. 50. The middleman often does not know the buyer is an informant. In this case, S.P. could not purchase the drug directly from "E" because she had been the confidential informant in a previous case against him; "E" was aware she was an informant. Tr. 51. The "unwitting source" was B.P. Tr. 52.

{¶4} With this information, Officer Hanlin asked S.P. to set up a buy. S.P. was searched and given marked money. She wore a hidden camera during the buy. B.P. was not searched before the controlled buy, was not working for the police, and was not aware of the police involvement. Tr. 101.

{¶5} There were two controlled buys on July 28, 2015 because the camera hidden on S.P. was not working during the first buy. Tr. 53. During the buys S.P. remained in the car while B.P. purchased the drugs. S.P. stayed on a cellular phone with Officer Hanlin informing him of what she saw. There were three surveillance teams located within a block of Appellant's believed residence, 740 North Fifth Street, Steubenville, Ohio. Tr. 54. Appellant was observed exiting the residence and walking to the area where the controlled purchase took place. Tr. 54. He was then observed re-entering the residence several minutes later. Tr. 54.

{¶6} As a result of the controlled buy, a search warrant for 740 North Fifth Street was obtained. A search of the residence was performed that day. Appellant, Angela Gilliam, and Gilliam's daughter were at the house when the search warrant was executed.

{¶7} Appellant was sitting on a couch in the living room when the SWAT team entered. He was instructed to put his hands up, which he did. According to officers shortly after putting his hands up he started bending down and reaching under the couch. The officers immediately restrained Appellant and removed him from the house.

{¶8} Appellant was searched. Crack cocaine and $140 of the $200 buy money was found on his person.

{¶9} A search of the house produced 7 guns, over 100 grams of cocaine, drug paraphernalia, and multiple cellphones. All guns were tested and found to be operable. One of the guns was found under the couch where Appellant was sitting. The cocaine found consisted of approximately 110 grams of powder cocaine and 10 grams of crack cocaine. Many of the cellphones were locked and/or broken and did not have any evidentiary value. However, one cellphone was accessible and did contain some evidentiary material. On that cellphone a picture of Appellant and his son was found. Also the call log from that cellphone indicated 489 telephone calls were made on July 28, 2015. Officer Hanlin testified they were able to access the text messages from a couple days prior to July 28 and a couple days after July 28; he opined the text messages were drug related. Tr. 87-89.

{¶10} As a result of the evidence obtained, Appellant was indicted for possession and having weapons while under disability. The possession charge was for possession of cocaine in excess of 100 grams in violation of R.C. 2925.11(A) and R.C. 2925.11(C)(4)(f), a first-degree felony. This charge contained an R.C. 2941.1410(A) major drug offender specification. The weapons while under disability charge was a third-degree felony in violation of R.C. 2923.13(A)(3). This charge referenced his prior felony drug possession conviction from Jefferson County, case number 05-CR-040.

{¶11} During the pre-trial proceedings, Appellant moved to suppress the items found in the residence located at 740 North Fifth Street based in part on the search warrant. Judge Bruzzese had signed the search warrant and he was the judge assigned to preside over the trial. Accordingly, for purposes of the suppression motion, Judge Bruzzese recused himself and the suppression motion was ruled on by Judge Miller. Judge Miller overruled the suppression motion.

{¶12} The case proceeded to a jury trial. Appellant's testimony indicated his defense was the police, specifically Officer Hanlin, planted the cocaine. He contended this was done because he did not cooperate in the 2005 drug case;

allegedly Officer Hanlin wanted Appellant to work as an informant and reveal the supplier of the drugs.

**{¶13}** The jury found Appellant guilty. 3/4/16 Verdicts. Appellant was sentenced to an aggregate 14-year sentence. He received 11 years on the possession of cocaine conviction. All 11 years was mandatory due to the specification. He received 3 years on the having weapons while under disability conviction. The court made the mandatory consecutive sentencing findings and ordered the sentences to be served consecutively to each other.

**{¶14}** Appellant timely filed a notice of appeal from the verdicts and sentence.

First Assignment of Error

"The trial court erred by denying the Criminal Rule 29 motion as the state failed to meet the burden of production on the element of possession."

**{¶15}** This assignment of error deals solely with the possession of cocaine conviction. Appellant contends the state failed in its burden of production because it did not offer evidence proving the quantity of "actual" cocaine in the mixture. This is a sufficiency of the evidence argument.

**{¶16}** Sufficiency of the evidence is a question of law dealing with legal adequacy of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). It is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In viewing a sufficiency of the evidence argument, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). A conviction cannot be reversed on grounds of sufficiency unless the reviewing court determines that no rational juror could have found the elements of the offense proven beyond a reasonable doubt. *Id.* at 138.

**{¶17}** As aforementioned, Appellant was charged and convicted of possessing over 100 grams of cocaine in violation of R.C. 2925.11(A)(C)(4)(f). That provision provides:

(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

* * *

(C) Whoever violates division (A) of this section is guilty of one of the following:

* * *

(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:

* * *

(f) If the amount of the drug involved equals or exceeds one hundred grams of cocaine, possession of cocaine is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree.

R.C. 2925.11(A)(C)(4)(f).

{¶18} Appellant's argument focuses on one element of the offense – the amount of cocaine. He contends the state did not produce evidence of the weight of the "actual" cocaine. He correctly points out the state's evidence of the weight of the cocaine included any filler materials contained in the cocaine mixture. In support of his position that the state was required to produce evidence of the "actual" weight of the cocaine he cites to *State v. Gonzales*, 6th Dist. No. WD-13-086, 2015-Ohio-461, a case from our sister district. In *Gonzales*, the court reversed a first-degree felony cocaine possession conviction because the "actual" cocaine weight, without the filler, was not established by the state. *Id.* at ¶ 40-48. The Sixth Appellate District Court held, "the state, in prosecuting cocaine offenses under R.C. 2925.11(C)(4)(a) through

(f), must prove that the weight of the actual cocaine possessed by the defendant met the statutory threshold." *Id.* at ¶ 47. On that basis, Appellant asks us to hold there was insufficient evidence to convict Appellant of possessing over 100 grams of cocaine. In making the argument, Appellant acknowledges the *Gonzales* decision was appealed and accepted by the Ohio Supreme Court.

**{¶19}** Following the briefing of this case, the Supreme Court released its decision in *Gonzales*. The Supreme Court reversed the Sixth Appellate District Court's decision and held, "the applicable offense level for cocaine possession under R.C. 2925.11(C)(4) is determined by the total weight of the drug involved, including any fillers that are part of the usable drug." *State v. Gonzales*, __ Ohio St.3d __, 2017-Ohio-777, __ N.E.3d __, ¶ 18. Therefore, the total weight of the cocaine includes fillers.

**{¶20}** Stephanie Laux, a forensic scientist in the chemistry department of BCI tested the substances discovered in the search of 740 North Fifth Street. She weighed and identified five different substances. Tr. 153, 156-157; State's Exhibits 53, 58 and 59. The first substance was an off-white substance weighing .25 grams and was found to be cocaine. Tr. 153; State's Exhibit 53. The second substance was an off-white substance weighing 7.24 grams and was found to be cocaine. Tr. 153; State's Exhibit 53. The third substance was a white powder weighing 110.62 grams and was found to be cocaine. Tr. 153; State's Exhibit 53. The fourth substance was an off-white substance weighing .71 grams and was found to be cocaine. Tr. 156; State's Exhibit 58. The fifth substance was an off-white substance weighing .86 grams and was found to be cocaine. Tr. 157; State's Exhibit 59. Laux testified the total weight of the cocaine tested was in excess of 110 grams. Tr. 153-154.

**{¶21}** Given the Ohio Supreme Court's decision and the state's evidence, the state met its burden of production. This assignment of error lacks merit.

<u>Second Assignment of Error</u>

"The conviction for Drug Possession is against the manifest weight of the evidence."

**{¶22}** When reviewing a judgment under a criminal manifest weight standard of review, "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387. A reviewing court's discretionary power to reverse on manifest weight grounds and grant a new trial is exercised only in the exceptional case where the evidence weighs heavily against conviction. *Id.* This standard is a high one because the trier of fact was in the best position to determine credibility issues, by having personally viewed the demeanor, voice inflections and gestures of the witnesses. *State v. Ali*, 154 Ohio App.3d 493, 2003–Ohio–5150, 797 N.E.2d 1019, ¶ 36 (7th Dist.).

**{¶23}** Like Appellant's sufficiency of the evidence argument, Appellant's manifest weight of the evidence argument only focuses on his possession conviction. Appellant's manifest weight of the evidence argument is also based upon the same premise as his sufficiency of the evidence argument; Appellant contends the state did not prove beyond a reasonable doubt that he possessed more than 100 grams of cocaine because there was no evidence proving the quantity of the "actual" cocaine. This argument fails for the same reasons his sufficiency of the evidence argument failed.

**{¶24}** As aforementioned, the Ohio Supreme held "the entire 'compound, mixture, preparation, or substance,' including any fillers that are part of the usable drug, must be considered for the purpose of determining the appropriate penalty for cocaine possession under R.C. 2925.11(C)(4)." *Gonzales*, 2017-Ohio-777 at ¶ 3. Laux, a BCI forensic scientist in the chemistry department, testified the total weight of the cocaine was in excess of 110 grams. Tr. 153-154. She tested five substances and each were found to be cocaine. Tr. 153, 156-157; State's Exhibits 53, 58 and 59. Those substances ranged in weight from .25 grams to 110 grams and when the weight of the substances was added together it amounted to more than 100 grams of cocaine. Tr. 153, 156-157; State's Exhibits 53, 58 and 59. Appellant did not produce

any evidence calling into doubt Laux's weighing of the substances or her conclusion that the substances tested positive for the presence of cocaine.

**{¶25}** On that basis, Appellant's argument fails. The verdict for possessing over 100 grams of cocaine is not against the manifest weight of the evidence; the jury did not lose its way. This assignment of error is meritless.

Third Assignment of Error

"The trial court erred by not allowing the jury to hear proffered testimony that challenged the actual weight of the cocaine, which excused the state from proving that the weight of the cocaine was one hundred grams or more."

**{¶26}** This assignment of error is closely related to the first two assignments of error. When Stephanie Laux from BCI testified about the weight of the cocaine, Appellant attempted to illicit testimony about how much "actual" cocaine had to be in the mixture for the test to yield a positive result for cocaine. Tr. 159-161. During the sidebar discussion, counsel for Appellant stated Appellant's defense was that he was being framed. Tr. 160. He explained, "What I'm trying to show is that it wouldn't take a lot of money to buy a small amount of cocaine and mix it with filler and have him over the – over the statutory limit for being a major drug trafficker." Tr. 159-160. He also stated he was asking as a matter of science; he wanted to know the smallest percentage detectable. Tr. 162.

**{¶27}** The trial court did not permit that type of questioning in front of the jury. Tr. 161, 164. However, it did permit it outside the hearing of the jury to determine if it was admissible. Tr. 164, 166-167. During the proffered testimony, Laux explained that BCI does not do a quantitative analysis of the substance to determine the amount of "actual" cocaine. Tr. 167. She stated she could not give an exact answer as to what the lowest percentage of cocaine in the mixture could be to yield a positive test result for cocaine. Tr. 167. However, she stated it is a "trace amount." Tr. 167.

**{¶28}** After hearing all the evidence presented by both the state and Appellant, the trial court did not permit Laux's proffered testimony to be read into the record for the jury to consider. Tr. 250.

**{¶29}** On appeal, Appellant argues the trial court committed error when it denied his request to have the jury hear Laux's proffered testimony. As with the first two assignments of error, this argument is based on the Sixth Appellate District Court's *Gonzales* decision holding that the weight of the "actual" cocaine is what determines the appropriate level of the offense.

**{¶30}** Based on the Ohio Supreme Court's decision reversing the Sixth Appellate District Court's holding, we find there is no merit with Appellant's argument. *Gonzales*, 2017-Ohio-777. The Supreme Court held fillers are included in the total weight of the drug; "the applicable offense level for cocaine possession under R.C. 2925.11(C)(4) is determined by the total weight of the drug involved, including any fillers that are part of the usable drug." *Id.* at ¶ 18. Therefore, Laux's proffered testimony is of no consequence. Fillers are permitted to contribute to the weight of the drug in determining the applicable offense level. *Id.* at ¶ 3, 18.

**{¶31}** This assignment of error is meritless.

<u>Fourth Assignment of Error</u>

"Defendant did not receive his constitutional right to a fair trial and due process because of cumulative error and prosecutorial misconduct."

**{¶32}** Appellant argues he did not receive a fair trial because of cumulative error. Cumulative error exists only where the harmless errors during trial actually "deprive[d] a defendant of the constitutional right to a fair trial." *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus. In the absence of multiple errors, the cumulative error doctrine does not apply. *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 132.

**{¶33}** Appellant references five alleged harmless errors and argues these errors, when combined together, denied him a fair trial. The alleged harmless errors are improper introduction of a prior drug offense, bolstering of key witness by the prosecutor, discrepancies for date of the charging complaint, the search warrant was issued by the trial judge, and the record suggests an agreement between Angela Gilliam, the state's key witness and Appellant's co-defendant, that was not disclosed.

*1. Prior conviction*

**{¶34}** Appellant contends the state improperly introduced a prior drug offense from 2005 during Detective Hanlin's testimony. The first introduction occurred to explain why S.P. could not directly purchase drugs from Appellant:

Q. Were you involved in a prior drug trafficking case involving this Defendant?

A. I was, in 2005.

Q. Okay. And who was your confidential informant in that particular case?

A. Two separate subjects, although S.P. advised me at that time that she participated in that investigation.

Q. All right. And because she participated in that particular investigation she could not make the buys directly against – from this Defendant this time.

A. Right. That's what prevented her to go directly to him.

Tr. 51.

**{¶35}** The second introduction of the 2005 drug conviction was to establish an element of the charge of having weapons while under disability:

Q. Okay. Now, in 2005 were you the law enforcement officer that was involved with Mr. Henry's prior drug conviction?

A. I was.

Q. And are you able to identify the Elvis Henry in the 2005 drug conviction as being the same Elvis Henry that's sitting in the courtroom today?

A.  That individual is to my slight right in a blue sweater, light blue shirt, blue tie.

MR. PATE [Prosecutor]:  Let the record reflect that this Defendant has been identified as the same Elvis Henry that was convicted in 2005.

Tr. 92-93.

{¶36} Appellant was charged with R.C. 2923.13(A)(3) which indicates a person cannot knowingly have a fireman if that person has been convicted of a felony offense involving illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.  The above testimony established Appellant was under disability because of a prior felony possession conviction.  That testimony establishes the disability element of the having weapons while under disability charge.

{¶37} The record is devoid of any indication Appellant wanted to stipulate to the prior conviction so that the jury would not hear the details of the prior conviction.  Had there been a stipulation that was not accepted by the trial court then error would have occurred.  *State v. Creech*, __ Ohio St.3d __, 2016-Ohio-8440, __ N.E.3d __, ¶ 40 ("Pursuant to Evid.R. 403, in a case alleging a violation of R.C. 2923.13, when the name or nature of a prior conviction or indictment raises the risk of a jury verdict influenced by improper considerations, a trial court abuses its discretion when it refuses a defendant's offer to stipulate to the fact of the prior conviction or indictment and instead admits into evidence the full record of the prior judgment or indictment when the sole purpose of the evidence is to prove the element of the defendant's prior conviction or indictment.").  However, without the offer of a stipulation it is presumed it was trial strategy to not stipulate to the prior conviction that put him under disability.

*2. Bolster witness*

{¶38} Appellant argues the prosecutor bolstered or vouched for the credibility of its witness, Angela Gilliam, during the cross-examination of Appellant and during the closing argument.

**{¶39}** Prosecutorial misconduct does not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record. *State v. Harp*, 4th Dist. No. 07CA848, 2008-Ohio-3703, at ¶ 20, citing *State v. Lott*, 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990). "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 92, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940 (1982).

**{¶40}** "It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused." *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1992), citing *State v. Thayer* (1931), 124 Ohio St. 1, 176 N.E. 656 (1931). However, "isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 94, citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868 (1974).

**{¶41}** "The prosecution is normally entitled to a certain degree of latitude in its concluding remarks." *Smith*, 14 Ohio St.3d at 13. We must "view the state's closing argument in its entirety to determine whether the allegedly improper remarks were prejudicial." *State v. Treesh*, 90 Ohio St.3d 460, 466, 739 N.E.2d 749 (2001). A prosecutor "may strike hard blows, [but] he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629 (1935).

**{¶42}** The alleged improper statements occurred during the state's cross-examination of Appellant and during closing arguments. The cross-examination and closing arguments concerned Angela Gilliam's testimony. She testified Appellant was staying with her on and off from June 2015 through the search date of July 28, 2015. Tr. 190. She stated the lock box containing the drugs was his and the closet where the lock box was found was his. Tr. 190, 192-193. The male clothes and the Newport cigarettes found in that closet were Appellant's. Tr. 192-193. She also testified Appellant sent her letters after he was charged. Tr. 193. In those letters he

stated his lawyer told him the only way the charges would "stick" is if she said the male clothes in the closet were his and that he was living there. Tr. 194-195; State's Exhibit 62. He asked her to say he was not living there and nothing illegal found belonged to him. Tr. 195; State's Exhibit 63.

{¶43} During the cross-examination, the state questioned Appellant about the letters he sent to Angela Gilliam instructing her to tell the police Appellant was not living with her:

Q. You and Angela get along?

A. We're very close.

Q. So, is she lying up here?

A. She has to be, yes.

Q. Okay. So, why do you keep telling her "All you got to say is I don't live there"? Why are you saying that?

A. Say what? Excuse me?

Q. In your letter –

A. Uh-huh.

Q. – "All you got to say," to Angela, "is I didn't live there."

A. Right because I didn't live there and I knew that under the – the – the procedure that I received from Officer Hanlin, he will make you say things that you don't want to say. He will make you do things that you wouldn't do by threatening your livelihood and your freedom. So, I knew what they was going to do to her.

Q. She – she didn't say that.

A. Well.

Q. She didn't say that. So, if she didn't say that it's either not true or she's lying.

A. Well, I was raised not to call anybody liars. That's very disrespectful. I would say she might have been mistaken but if you want me to give you –

Q. Mistaken about what? Mistaken about?

A. Mistaken about what was in her house and who – who – where that stuff – who that stuff belonged to.

Q. I mean, I showed her the picture. I asked her about this. She says that's you.

A. What would any woman say that has charges like this that, mind you, that she was charged with 70 days later, what would a woman say if they're charged – if they're trying to charge her with something and threatening her freedom, saying 14, 16 years, what would – what would – and – and they want you to say something, what would you do? She's going to say – she's going to say whoever they want you to say. Anybody would do that.

Tr. 244-245.

{¶44} During closing, the prosecutor discussed the evidence and disputed Appellant's statement that Angela Gilliam was mistaken when she testified the clothes and the safe where the drugs were found belong to Appellant:

The content of the letters that he wrote to Angela Gilliam that you will receive and you can review in total and what I want you to do is to review those letters and ask yourself whether those letters are consistent with his ignorance that he didn't know anything about these drugs, these guns.

You will find that he tells Angela Gilliam "This is what I want you to tell law enforcement, tell them that stuff is not mine." Well, I submit that that statement is more consistent with his knowledge than it is with his ignorance.

"Tell them you don't know whose stuff that is but it definitely wasn't yours." We know that. "Tell them that – don't tell them that the clothes there are mine." Those are statements of a Defendant that is trying to tell a person "help me out, tell them something that isn't so to help me."

And then you have the testimony of Angela Gilliam. Contrary to what Defense Counsel said, she said she saw him with drugs in the past when he would take it out of his pocket.

She said that the safe and clothes belong to Elvis Henry. She said that he smokes Newport cigarettes. A carton of Newport cigarettes is in a tote that she says has his clothes and his safe. She was neither lying nor mistaken. She was telling you the truth.

She said that he stayed at 740 North Street from time to time from the end of May to July 28th. You have to look at the photographs, of all the drugs, the drug paraphernalia, the guns that were scattered throughout this house.

Tr. 279-280.

{¶45} The prosecutor's closing argument continues with a discussion about the drug paraphernalia, guns, cell phones, and text messages. Tr. 280-281. The prosecutor also discussed Appellant's defense contending law enforcement planted the drugs. Tr. 280-281.

{¶46} Considering the context in which the statements were made, the prosecutor did not commit misconduct. His questioning and closing pointed out the holes in Appellant's position that Angela Gilliam was mistaken when she claimed he

was the owner of the clothes and safe. When read in context, the language used does not rise to a level of misconduct.

*3. Charging complaint*

**{¶47}** The third alleged error is the allegation that the charging document was filed before the crime occurred.

**{¶48}** The search of 740 North Street occurred on July 28, 2015. The Municipal Court charging complaint is signed by the clerk and dated July 30, 2015. The charging complaint indicates Appellant had over 100 grams of cocaine and was being charged as a major drug offender. The time stamped date on the charging complaint, however, is July 20, 2015.

**{¶49}** This document was introduced by the defense during Officer Hanlin's testimony. However, the discrepancy between the date the search was performed, the date the charging complaint was signed, and the date the charging complaint was time-stamped was not argued until Appellant's closing argument. The defense argued the time-stamped date indicated the complaint was made prior to the search and thus, supported Appellant's defense that he was framed.

**{¶50}** The state argued in its rebuttal that this was mechanical error in the stamping and could not otherwise explain the time-stamped date.

**{¶51}** While the time-stamped date is peculiar, this argument was presented to the jury. The jury could determine whether the time-stamped date raised reasonable doubt as to whether Appellant was a major drug offender in possession of more than 100 grams of cocaine. Given the verdict, the jury did not find reasonable doubt as to Appellant's guilt. The document was signed by a clerk of the Municipal Court indicating the complaint was sworn to her on July 30, 2015. The jury obviously believed the Clerk's sworn signature over the time-stamped date.

**{¶52}** This alleged error was a factual issue for the jury to determine, which it did.

*4. Search warrant issued by same judge that presided over the trial*

**{¶53}** Next Appellant claims error occurred when the judge that issued the search warrant also presided over the trial.

**{¶54}** As explained above, the trial judge did sign the search warrant in this case. The defense challenged the search warrant during pretrial proceedings. Upon request, the trial judge recused himself from the challenge and the search warrant issue was decided by another judge. That judge found no merit with the challenge. The case then proceeded to trial before the original judge. Appellant did not object to the judge presiding over the trial.

**{¶55}** There is nothing in the record to suggest Appellant was deprived a fair trial because the trial judge issued the search warrant; the trial judge did not preside over the search warrant challenge. There was no error, harmless or otherwise.

*5. Record suggests an agreement existed between the State and Angela Gilliam*

**{¶56}** Appellant contends the record suggests there was an agreement between the state and Angela Gilliam. Appellant appears to be contending there was an agreement between the state and Angela Gilliam that if she testified favorably for the state her indictment would be dismissed.

**{¶57}** Due process provisions in both the United States and Ohio Constitutions require the prosecuting attorney to disclose all evidence that is "favorable" to the accused and "material" to issues of guilt or punishment. *State v. Johnson*, 39 Ohio St.3d 48, 60-63, 529 N.E.2d 898 (1988); *Ambartsoumov v. Warden, Chillicothe Correctional Inst.*, S.D.Ohio No. 2:12-CV-345, 2014 WL 3045304, Magistrate's report and recommendation adopted, S.D.Ohio No. 2:12-CV-3452014 WL 4805384, citing *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194 (1963). The United States Supreme Court has recognized *Brady* encompasses evidence and information that may be used to impeach prosecution witnesses. *Giglio v. United States*, 405 U.S. 150, 154–55, 92 S.Ct. 763 (1972) (Promises for favorable treatment and plea agreements must be disclosed.).

**{¶58}** Accordingly, if there was an agreement then it should have been disclosed. However, the record before us does not indicate there was an agreement between Angela Gilliam and the state. Instead, the record indicates there was no agreement. Angela Gilliam testified there was no agreement. Tr. 201. On cross-examination she was asked if it was her understanding when she made a statement

to the police about the letters and drugs that it would help her. Tr. 201. She avowed that was not her understanding and it would not help her; she was still facing the same charges as Appellant faced. Tr. 201. She did state she testified on his behalf at the preliminary hearing, but then she changed her mind because she was "brought into it" and indicted. Tr. 198. During closing arguments, the state also indicated there was no deal with Angela; "Now, Angela is going to come to trial down the road. This Defendant is on trial now and so we have to determine his awareness, his knowledge from the evidence that's been presented." Tr. 280.

**{¶59}** Consequently, the record does not support Appellant's claim that there was an agreement between the state and Angela Gilliam.

**{¶60}** In conclusion, this assignment of error lacks merit. The alleged errors are not errors, harmless or otherwise. Since there are no multiple harmless errors, the cumulative error doctrine does not apply. *Hunter*, 2011-Ohio-6524 at ¶ 132.

## Conclusion

**{¶61}** All assignments of error are meritless. Appellant's convictions are affirmed.

Waite, J., concurs.

DeGenaro, J., concurs.