[Cite as *State v. Hamilton*, 2014-Ohio-3171.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| EDGAR LEE HAMILTON | : | Case No. 13CA93 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |



CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                 Pleas, Case No. 2013-CR-404D




JUDGMENT:                        Affirmed




DATE OF JUDGMENT:                July 17, 2014




APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JILL M. COCHRAN                           WILLIAM PAUL BRINGMAN
38 South Park Street                      13 East College Street
Mansfield, OH  44902                      Fredericktown, OH  43019

*Farmer, J.*

{¶1}    On July 8, 2013, the Richland County Grand Jury indicted appellant, Edgar Lee Hamilton, on two counts of felonious assault in violation of R.C. 2903.11, one count of aiding escape or resistance to authority in violation of R.C. 2921.35, one count of vandalism in violation of R.C. 2909.05, one count of disrupting public service in violation of R.C. 2909.04, and one count of intimidation in violation of R.C. 2921.03.

{¶2}    The felonious assault charges arose from an incident wherein appellant struck John Greer and his girlfriend, Kathy Myers, with a baseball bat.  The parties were in the home of Bobbi Tubbs, appellant's girlfriend and Ms. Myers's daughter.  The remaining counts arose from appellant's acts while in jail.

{¶3}    The vandalism count was amended to criminal mischief in violation of R.C. 2909.07.  A jury trial commenced on October 3, 2013.  The jury found appellant guilty as charged.  By sentencing entry filed October 9, 2013, the trial court sentenced appellant to an aggregate term of ten years in prison.

{¶4}    Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶5}    "THE TRIAL COURT ERRED IN NOT DISMISSING THE INDICTMENT FOR APPELLEE'S FAILURE TO PROVIDE TERRITORIAL JURISDICTION INFORMATION TO ESTABLISH SUBJECT MATTER JURISDICTION IN THE TRIAL COURT."

II

{¶6}   "THE TRIAL COURT ERRED IN NOT DISMISSING THE INDICTMENT FOR APPELLEE'S FAILURE TO ESTABLISH BY THE GREATER WEIGHT OF THE EVIDENCE THAT APPELLANT IS GUILTY OF ALL COUNTS OF THE INDICTMENT."

III

{¶7}   "THE TRIAL COURT ERRED IN APPOINTING INCOMPETENT TRIAL COUNSEL TO REPRESENT APPELLANT IN THE TRIAL COURT PROCEEDINGS."

IV

{¶8}   "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR SEPARATE TRIALS FOR COUNTS 1 AND 2 FROM COUNTS 3, 4, 5, AND 6."

V

{¶9}   "THE TRIAL COURT ERRED IN ALLOWING APPELLEE'S COUNSEL TO REPEATEDLY ASK LEADING QUESTIONS OF APPELLEE'S WITNESSES EVEN THOUGH APPELLANT'S TRIAL COUNSEL DID NOT MAKE OBJECTIONS TO SAID QUESTIONS."

I

{¶10}   Appellant claims the indictment was defective because it failed to allege the state in which the events resulting in the criminal charges occurred.  We disagree.

{¶11}   Crim.R. 7(B) sets forth the nature and contents of an indictment and states it shall "contain a statement that the defendant has committed a public offense specified in the indictment.***The statement may be made in ordinary and concise language without technical averments or allegations not essential to be proved."

{¶12} R.C. 2901.11 governs criminal law jurisdiction. Subsection (A)(1) states: "A person is subject to criminal prosecution and punishment in this state if any of the following occur:***The person commits an offense under the laws of this state, any element of which takes place in this state." Subsection (D) states the following:

When an offense is committed under the laws of this state, and it appears beyond a reasonable doubt that the offense or any element of the offense took place either in this state or in another jurisdiction or jurisdictions, but it cannot reasonably be determined in which it took place, the offense or element is conclusively presumed to have taken place in this state for purposes of this section.

{¶13} Each count of the indictment alleged the jurisdiction to be "at the County of Richland." The specific counts were prefaced by the following:

INDICTMENT FOR: **FELONIOUS ASSAULT (2 counts), AIDING ESCAPE OR RESISTANCE TO LAWFUL AUTHORITY, VANDALISM, DISRUPTING PUBLIC SERVICE & INTIMIDATION**

THE STATE OF OHIO, RICHLAND COUNTY, SS.

COURT OF COMMON PLEAS

Of the term of May in the Year of our Lord two thousand thirteen.

The jurors of the grand jury of the State of Ohio, within and for the body of the County aforesaid, on their oaths, in the name and by the authority of the State of Ohio, do find and present that:

{¶14} We find this language is sufficient to establish the jurisdiction of the state of Ohio, Richland County. As explained by the Tenth District in *State v. Williams,* 53 Ohio App.3d 1, *4 (10th Dist.1988):

However, R.C. 2901.11(D) provides that, when an offense is committed under the laws of this state and it appears beyond a reasonable doubt that the offense or any element took place either in Ohio or in another jurisdiction and it cannot reasonably be determined in which it took place, such offense or element is *conclusively presumed* to have taken place in *this state* for purposes of this section.

Appellees are accused of committing offenses under the laws of this state, *i.e.,* R.C. 2913.02(A)(3), which is theft by deception, and also R.C. 2913.31(A)(3), which is uttering or possessing with purpose to utter any writing which he knows to have been forged. Assuming, *arguendo,* that we do not know in which state these offenses were performed under R.C. 2901.11(D), Ohio still claims subject matter jurisdiction over the offenses.

{¶15} Upon review, we find the indictment was not defective.

{¶16} Assignment of Error I is denied.

II

{¶17} Appellant claims his convictions were against the manifest weight of the evidence. We disagree.

{¶18} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶19} In Counts 1 and 2, appellant was convicted of felonious assault in violation of R.C. 2903.11 which states: "(A) No person shall knowingly do either of the following: (1) Cause serious physical harm to another or to another's unborn; (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

{¶20} Count 1 was the felonious assault of John Greer. Appellant argues Mr. Greer was the aggressor and he was acting in self-defense. Self-defense was never raised as an affirmative defense.

{¶21} Kathy Myers testified she observed appellant shove Mr. Greer while Mr. Greer was working in a closet. T. at 118. She heard appellant threaten Mr. Greer, and observed him picking up a metal candlestick holder and taunt Mr. Greer to "[c]ome on,

come on." T. at 119. She was unsure who threw the first punch, but Mr. Greer was on the ground when appellant picked up a baseball bat and hit him in the stomach and back. T. at 119-121.

{¶22} Mr. Greer substantiated her observations. He testified while he was hanging a dowel rod in the closet, appellant "nudged" him real hard. T. at 133. Mr. Greer said "excuse me" and appellant responded, "You got a problem?" T. at 134. Appellant then threatened him with a metal candlestick holder and said he would "leak" him. *Id.* Mr. Greer understood this term to mean "he was going to hurt me." *Id.* They tussled around and Mr. Greer tripped over some toys and fell to the ground with appellant falling on top of him. T. at 135. Appellant hit him with a baseball bat about four to eight times. T. at 136. Mr. Greer sustained bruising. T. at 136, 139*.*

{¶23} Kaylee Smith, Ms. Myers's daughter, also witnessed appellant bump into Mr. Greer and then threat him with the candlestick holder, and say "something about leaking John." T. at 147-148. After Mr. Greer fell to the floor, appellant picked up a baseball bat and "started swinging." T. at 149.

{¶24} We find this testimony was sufficient to establish that appellant, not Mr. Greer, was the aggressor, and that all the elements of felonious assault were met.

{¶25} Count 2 was the felonious assault of Ms. Myers. Appellant does not deny that he hit her, but claims he did not intend to hit her as it was an accident. As cited above, the culpable mental state of felonious assault is "knowingly." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge

of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶26} Ms. Myers testified to the attack as follows (T. at 121-122):


A. ***I just screamed. I don't know what all I said, but I turned to my daughter Kaylee, and I said call 9-1-1 and run. And so when I said that he came at me and he went to swing the ball bat at me and he was going to hit me in the face.

***

Q. You said it was coming towards your face?

A. Right, and I did like this (indicating).

Q. And did the ball bat hit your arm?

A. Yes.


{¶27} We find this testimony establishes more than an inadvertent attack and meets the definition of "knowingly."

{¶28} In Count 3, appellant was convicted of aiding escape or resistance to authority in violation of R.C. 2921.35(B) which states: "No person who is confined in a detention facility, and with purpose to promote or facilitate an escape or resistance to lawful authority, shall make, procure, conceal, unlawfully possess, or give to another inmate, any instrument or thing which may be used for such purposes."

{¶29} The "instrument" in question was a cellular telephone. Appellant argues the state failed to establish he knew he was not permitted to have it in the jail and knew

it could have been used to "promote or facilitate an escape or resistance to lawful authority."

{¶30} Corrections Officer Christopher Fletcher and Richland County Sheriff's Lieutenant James Young both testified that all inmates are informed about the rules prohibiting cellular telephones. T. at 191, 209-210. Appellant was observed with the cell phone in his hand, appearing to be hiding it during a search by Lieutenant Young. T. at 213. Appellant admitted to having the cell phone in his hand and to having used it. T. at 285-286, 289. Once the cell phone was discovered, appellant threatened the officer if he was charged with its possession. T. at 214. Also, there was evidence that appellant called and sent text messages to his girlfriend, Bobbi Tubbs, in an effort to persuade her from going to court. T. at 232-236. Appellant admitted to the telephone calls and texts. T. at 287.

{¶31} We find the illegal possession of the cellular telephone to communicate to the outside world without the scrutiny of monitored jailhouse telephones, coupled with actual communications, to be sufficient to establish the elements of R.C. 2921.35(B). Appellant knew he was not permitted to have the cell phone in the jail as evidenced by his attempt to hide the phone and his concern with being charged with its possession.

{¶32} In Counts 4 and 5, appellant was convicted of criminal mischief in violation of R.C. 2909.07(A)(1) and disruption of public services in violation of R.C. 2909.04(A)(3). R.C. 2909.07(A)(1) states: "(A) No person shall: (1) Without privilege to do so, knowingly move, deface, damage, destroy, or otherwise improperly tamper with the property of another." It is a misdemeanor of the first degree if the criminal mischief

creates a risk of physical harm to any persons.  R.C. 2909.07(C)(2).  R.C. 2909.04(A)(3) states the following:

> (A) No person, purposely by any means or knowingly by damaging or tampering with any property, shall do any of the following:
>
> (3) Substantially impair the ability of law enforcement officers, firefighters, rescue personnel, emergency medical services personnel, or emergency facility personnel to respond to an emergency or to protect and preserve any person or property from serious physical harm.

{¶33} The act in question was the tampering of a sprinkler head in the jail. Although appellant admitted that he tampered with the sprinkler head and a videotape, State's Exhibit 21, shows the resulting damage, he argues there was insufficient evidence to establish his act caused a risk of physical harm or impaired law enforcement officers or rescue personnel to respond or protect and preserve.

{¶34} The breaking of the sprinkler head caused the entire sprinkler system to be turned off while the broken head was repaired, thereby leaving the jail without a fire suppression system.  T. at 195-196, 218.  The repair took almost an hour at a cost of $347.95, placing the prisoners and staff at risk in the event of a fire.  T. at 225.  There was sufficient evidence that the jail was staffed by Sheriff's deputies, law enforcement officers under R.C. 2901.01(A)(11)(a); therefore, there was a disruption of public services by those deputies.  T. at 208, 223.

{¶35} We find the elements of criminal mischief and disruption of public services were satisfied by the admissions of appellant and the testimony of the officers.

{¶36} In Count 6, appellant was convicted of intimidation in violation of R.C. 2921.03(A) which states the following:

No person, knowingly and by force, by unlawful threat of harm to any person or property, or by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a public servant, party official, or witness in the discharge of the person's duty.

{¶37} Appellant argues his statement to Lieutenant Young that "if he got any charges out of this [possessing the cellular telephone] that he was going to make my life a living hell" was not sufficient to establish intimidation because he was unable to carry out his threat. T. at 214. "Notably, R.C. 2921.03(A) requires only an 'attempt' to influence, intimidate, or hinder; it is not necessary to establish that the officer was actually prevented from doing a particular task." *State v. Myers,* 3rd Dist. Henry No. 7-99-05, 2000-Ohio-1677, *1. Lieutenant Young testified he took the words to be a threat. T. at 214, 247-249. Lieutenant Young's wife is a sergeant and also works at the jail. T. at 230. We find appellant's statement to be sufficient to establish a threat against Lieutenant Young and the elements of intimidation.

{¶38} Upon review, we find the testimony and exhibits support the findings of guilty on all counts, and find no manifest miscarriage of justice.

{¶39} Assignment of Error II is denied.

III, V

{¶40} Appellant claims he was denied the effective assistance of trial counsel as his trial counsel failed on several issues, including requesting separate trials for Counts 1 and 2 from Counts 3, 4, 5, and 6, and failing to make objections to leading questions by the state. We disagree.

{¶41} The standard this issue must be measured against is set out in *State v. Bradley,* 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. Appellant must establish the following:

2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)

3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

{¶42} Appellant argues his trial counsel was deficient in not timely requesting separate trials. Defense counsel filed a "Motion for Relief from Prejudicial Joiner" on October 2, 2013, one day before trial. *See,* Assignment of Error IV. The state did not file an objection to timeliness.

{¶43} Appellant also argues his trial counsel should have objected to leading questions directed to witnesses Myers, Greer, Smith, Kilgore, Seman, Brubaker, Fletcher, Naugle, Young, and Eichinger.

{¶44} Evid.R. 611(A) states leading questions should not be used on direct examination except as necessary to develop the testimony of a witness. As explained by the Tenth District in *Lagore v. Buckeye International,* 10th Dist. Franklin No. 86 AP-63, 1986 WL 9113 (Aug. 21, 1986), *1:

> Generally, a question is leading when it suggests to the witness the answer the interrogator seeks to elicit; when it assumes a fact to be proven which is not proven; or when embodying a material fact, it admits of an answer by a simple negative or affirmative. *Crowell v. Western Reserve Bank* (1854), 3 Ohio St. 406; 44 Ohio Jurisprudence 3d (1983) 238, Evidence, Section 867.

{¶45} With the exception of Eichinger, all of the complaints of leading questions cover the entire direct examinations of the state's witnesses. Except for scattered preparatory leading questions about service, rank, knowledge of the individual, and day

of the incident, the questions were not leading. Preparatory questions can be leading in nature to avoid a complete narrative by a witness and are not on their face prejudicial.

{¶46} Objecting to preparatory questions lies within the trial strategy of counsel. This court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." *State v. Post,* 32 Ohio St.3d 380, 388 (1987).

{¶47} In addition, in his appellate brief at pages 15-16, appellant lists a litany of other failures by trial counsel. We find none of these claimed errors to be unduly prejudicial to appellant.

{¶48} Upon review, we do not find ineffective assistance of trial counsel.

{¶49} Assignment of Errors III and V are denied.

IV

{¶50} Appellant claims the trial court erred in not granting separate trials for Counts 1 and 2 from Counts 3, 4, 5, and 6. We disagree.

{¶51} Appellant argues Counts 1 and 2 involved felonious assault incidents on February 28, 2013 and the remaining counts occurred while appellant was an inmate at the county jail.

{¶52} Defense counsel filed a motion for relief from prejudicial joiner on October 2, 2013. There is no ruling on the motion in the docket. However, the trial court proceeded to trial as to counts collectively, therefore we presume the trial court denied the motion.

{¶53} Pursuant to Crim.R. 13, "[t]he court may order two or more indictments or informations or both to be tried together, if the offenses or the defendants could have been joined in a single indictment or information."

{¶54} Crim.R. 8(A) governs joinder of offenses and states the following:

Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.

{¶55} Crim.R. 14 governs relief from prejudicial joinder and states the following:

If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection

pursuant to Rule 16(B)(1) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial.

{¶56} The standard of review on this issue is set forth in *State v. Torres,* 66 Ohio St.2d 340 (1981), syllabus:

A defendant claiming error in the trial court's refusal to allow separate trials of multiple charges under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial.

{¶57} In *State v. Franklin,* 62 Ohio St.3d 118, 122 (1991), the Supreme Court of Ohio explained the following:

The prosecutor may counter the claim of prejudice in two ways. *State v. Lott,* 51 Ohio St.3d at 163, 555 N.E.2d at 298. The first is the "other acts" test, where the state can argue that it could have introduced evidence of one offense in the trial of the other, severed offense under the "other acts" portion of Evid.R. 404(B). *Id.;* see, also, *Bradley v. United States* (C.A.D.C.1969), 433 F.2d 1113, 1118-1119. The second is the

"joinder" test, where the state is merely required to show that evidence of each of the crimes joined at trial is simple and direct. *State v. Lott, supra; State v. Roberts* (1980), 62 Ohio St.2d 170, 175, 16 O.O.3d 201, 204, 405 N.E.2d 247, 251; *State v. Torres,* 66 Ohio St.2d at 343-344, 20 O.O.3d at 315, 421 N.E.2d at 1291. If the state can meet the joinder test, it need not meet the stricter "other acts" test. Thus, an accused is not prejudiced by joinder when simple and direct evidence exists, regardless of the admissibility of evidence of other crimes under Evid.R. 404(B). *State v. Lott, supra; State v. Roberts, supra; State v. Torres, supra.*

{¶58} Admittedly, the felonious assault counts occurred at a separate place with different witnesses. Therefore, the issue is whether "simple and direct evidence exists." We answer this issue in the affirmative.

{¶59} The witnesses and/or victims to the felonious assaults were Ms. Myers, Mr. Greer, and Ms. Smith. The investigating officers to the felonious assaults were Mansfield Police Officer Nelson Kilgore, and Mansfield Police Sergeants Douglas Seman and Chad Brubaker. The witnesses to the incidents at the jail were Officer Fletcher, Lieutenant Young, Robert Naugle, and Mansfield Police Officer Angela Eichinger. There could be no confusion as to the events. Any trial of Counts 3 through 6 would necessarily imply that appellant was jailed for other offenses. The trial court specifically instructed the jury to consider each count separately, and divided the jury charge between the felonious assault charges and the jail related charges. T. at 345. In addition, in his own testimony, appellant admitted to being a heroin addict at the time

of the felonious assaults, and breaking the sprinkler head and having a cellular telephone in his possession while in jail.  T. at 284-286, 294.

{¶60} We find no undue prejudice to appellant in trying the six counts collectively.  Upon review, we find the trial court did not err in denying appellant's motion for relief from prejudicial joinder.

{¶61}  Assignment of Error IV is denied.

{¶62}  The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed.

By Farmer, J.

Gwin, P.J. and

Baldwin, J. concur.

SGF/sg 618