**[Cite as *State v. Smith*, 2023-Ohio-683.]**

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | | JUDGES: |
| | : | | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | | Hon. John W. Wise, J. |
| | : | | Hon. Craig R. Baldwin, J. |
| -vs- | : | | |
| | : | | |
| PATRICK SMITH | : | | Case No. 2022 CA 00031 |
| | : | | |
| Defendant - Appellant | : | | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Licking County
                            Court of Common Pleas, Case No.
                            2021 CR 00652

JUDGMENT:                   Affirmed

DATE OF JUDGMENT:           March 6, 2023

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JENNY R. GONZALEZ-WELLS                BRIAN A. SMITH
Licking County Prosecutor             Brian A. Smith Law Firm, LLC
                                      123 South Miller Road, Suite 250
By: KENNETH OSWALT                    Fairlawn, Ohio 44333
Assistant Prosecuting Attorney
20 South Second Street
Newark, Ohio 43055

*Baldwin, J.*

**STATEMENT OF THE FACTS AND THE CASE**

**{¶1}** In late 2020, criminal charges were filed against the appellant in a matter pending before the Licking County Municipal Court. The appellant failed to appear for a court hearing in the municipal court case, and a warrant was issued for his arrest. He was arrested sometime in late October of 2021.

**{¶2}** Following his arrest, the appellant appeared before the municipal court judge for a bond hearing, at which time the judge set bond. Appellant thereafter began sending the judge numerous, almost daily letters. The appellant's letters to the judge were insulting and demanding. The appellant set forth what he wanted the judge to do in his case, and "ordered" the judge to take certain actions in the case. The appellant's letters to the judge contained personal attacks, were disparaging and offensive, and contained a great deal of profanity.

**{¶3}** On December 1, 2021, the judge received a letter dated November 24, 2021 from the appellant ("December 1, 2021 letter"). The letter was, again, replete with profanity, and instructed the judge regarding how the appellant's municipal court case was to proceed because appellant had ordered it so. The appellant then told the judge that he was the type who "deserves to have his entire family locked in a cage, doused with gasoline, and then set ablaze until even their bones are turned into ash." The appellant went on to tell the judge that "you, too, deserve to be locked in a cage and immolated, ISIS style, but only after you finish watching all your family and loved ones, colleagues, too, go through it first." The appellant then told the judge that he "deserve(s) to be burned the f--- alive." The appellant added the phrase "figuratively speaking, of course" at the end of the

letter in parenthesis. None of the appellant's previous letters to the judge contained overt threats to his personal safety or the safety of his family or colleagues.

{¶4}    The December 1, 2021 letter was different in tone from the other letters the judge had received from the appellant, so much so that it caused the judge to fear for his personal safety, the safety of his family, and the safety of his staff. As a result, he filed a report with the Licking County Sheriff.

{¶5}    The matter was investigated by the Licking County Sheriff's department, and the appellant was thereafter charged with intimidation in violation of R.C. 2921.03(A), a felony of the third degree; aggravated menacing in violation of R.C. 2903.21(A), a misdemeanor of the first degree; and, retaliation in violation of R.C. 2921.05(A), a felony of the third degree. The appellant appeared for a bond hearing on December 6, 2021, at which time bond was set. The appellant pleaded not guilty to all charges at his December 21, 2021 arraignment.

{¶6}    During the pendency of the within matter the appellant also sent numerous letters to the trial court judge. In one such letter, dated December 6, 2021 and file stamped December 16, 2021, the appellant stated: "I wrote what I wrote *precisely because* I *wanted* to cause an outrage!!" The appellant stated that he "…*wanted* him to be so mad at me that he refused to even look at me or preside over my cases in court!!" The appellant stated further that he wrote the letter to the judge because: "… I may as well piss him off so insanely much that we walks off/resigns from the cases himself!!"[1]

---

[1] While the trial court issued a January 13, 2022 Judgment Entry ordering that the appellant's handwritten correspondence be stricken from the record, it also ordered that "[s]uch documents may remain in the file for what evidence they may provide as to other pertinent issues in the case …."

**{¶7}** The matter proceeded to trial, at which time the municipal court judge testified that until the appellant's December 1, 2021 letter, he had never been directly threatened with harm to himself or his family in all his time on the bench. The appellant's letter caused the judge to fear for his safety and that of his family, and after reporting the incident to the Licking County Sheriff's department he consulted with members of law enforcement for advice regarding what he could do to make him and his family safer. In addition, he brought his family together and told them to be very careful about paying attention to their surroundings, and to keep doors locked at all times. Finally, he got a tutorial on the use of a gun in case he needed to defend himself or his family.

**{¶8}** The judge further testified that "in comparison with [appellant's] previous correspondence and the specificity of what he said I deserve to have happen to me and the fact that I wasn't getting any letters or correspondence from anybody else that was that mad at me, yes, I took it as a threat from him." The judge testified that the fact that the appellant was in jail did not assuage his concerns, as the appellant may have found a way to post bond and be released legally, or might have had friends or compatriots on the outside that could carry out the appellant's threats. Further, the underlying charges provided for less than one year of jail time, after which the appellant would be released.

**{¶9}** The judge testified that due to the criminal charges arising from his report to authorities, he did not continue to preside over the appellant's municipal court case. He consulted with his fellow municipal court judge, who felt uncomfortable presiding over it. The judge therefore put on an entry recusing both himself and his fellow municipal court judge from the appellant's municipal court case, and asked the Ohio Supreme Court to assign a visiting judge.

{¶10} Additional witnesses testified for the prosecution in support of the threatening nature of the letter, including a representative from the clerk of court's office and the Licking County Sheriff's Department deputy who investigated the judge's complaint. After the State rested, counsel for the appellant moved for acquittal pursuant to Crim. R. 29 arguing that, even viewing the evidence in a light most favorable to the State, the essential elements of the offenses with which the appellant was charged had not been met. The appellant's counsel argued further that there was no actual threat to the judge. Finally, appellant's counsel argued that the appellant was merely "spouting off" and "choosing his wording carefully so that there [was] no direct threat." The trial court denied the motion.

{¶11} The appellant's counsel argued that the language contained in the appellant's December 1, 2021 letter was not a threat, but rather, just the ranting of a frustrated individual. Counsel argued that the appellant did not state that he was going to actually put the judge and his family members in a cage and set them ablaze, merely that he felt the judge deserved it. In addition, counsel argued that the appellant's "figuratively speaking, of course" disclaimer at the bottom of the letter vitiated any ill will, rendering the letter merely bluster. Finally, counsel argued that the language contained in the letter was protected free speech.

{¶12} Counsel renewed the Crim. R. 29 motion for acquittal following closing arguments, which was again denied.

{¶13} The jury returned a guilty verdict on all counts. The trial court merged the charges for purposes of sentencing, and the State elected upon Count 1, the intimidation charge, for purposes of merger. The appellant was sentenced to eighteen (18) months in

prison with credit for time served. The appellant has appealed, setting forth the following three assignments of error:

{¶14} "I. APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE."

{¶15} "II. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶16} "III. THE FAILURE OF APPELLANT'S TRIAL COUNSEL TO CHALLENGE R.C. 2921.03, R.C. 2901.21, AND R.C. 2921.05(A) AS UNCONSTITUTIONAL AS APPLIED TO APPELLANT, IN VIOLATION OF APPELLANT'S RIGHT TO FREE SPEECH UNDER THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 11 OF THE OHIO CONSTITUTION, CONSTITUED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF APPELLANT'S RIGHT OT COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

{¶17} The appellant argues that his convictions were not supported by sufficient evidence, and that they were against the manifest weight of the evidence. In addition, he argues that his trial counsel was ineffective because he did not challenge the constitutionality of R.C. 2921.03, R.C. 2901.21, and R.C. 2921.05(A) as applied to appellant because the comments contained in his letter to the judge were protected speech. We disagree.

**ASSIGNMENTS OF ERROR NUMBERS ONE & TWO**

**Standard of Review**

{¶18} Sufficiency of the evidence was addressed by the Ohio Supreme Court in *State v. Worley,* 164 Ohio St.3d. 589, 2021-Ohio-2207, 174 N.E.3d 754:

The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). " 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E). A sufficiency-of-the-evidence challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 219.

*Id.* at ¶57.

{¶19} Thus, a review of the constitutional sufficiency of evidence to support a criminal conviction requires a court of appeals to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

{¶20} Manifest weight of the evidence, on the other hand, addresses the evidence's effect of inducing belief. *State v. Thompkins,* 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355. The *Thompkins* Court stated:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis added.) Black's, *supra,* at 1594.

*Id.* at 387.

{¶21} The Court stated further:

> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs,* 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether

in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id.*

**{¶22}** Furthermore, "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

**{¶23}** "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶24}** In the case *sub judice*, the jury found the appellant guilty of intimidation, aggravated menacing, and retaliation.

**Analysis**

**{¶25}** The appellant argues in his first and second assignments of error that his convictions on the charges of intimidation, aggravated menacing, and retaliation were not based upon sufficient evidence, and were against the manifest weight of the evidence. We disagree.

**{¶26}** Intimidation is defined by R.C. 2921.03, which provides in pertinent part:

No person, knowingly and by force, by unlawful threat of harm to any person or property, or by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a public servant, a party official, or an attorney or witness involved in a civil action or proceeding in the discharge of the person's the duties of the public servant, party official, attorney, or witness.

**{¶27}** Aggravated menacing is defined by R.C. 2903.21, which provides in pertinent part:

No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family. In addition to any other basis for the other person's belief that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family, the other person's belief may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

**{¶28}** Finally, retaliation is defined by R.2921.05, which provides in pertinent part:

No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal

action or proceeding because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness.

**{¶29}** The intimidation and aggravated menacing charges required that the appellant act "knowingly." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).  The retaliation charge required that the appellant act "purposely." "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

**{¶30}** In order to prevail at trial on the intimidation charge, the appellee had to prove beyond a reasonable doubt that the appellant: 1) knowingly; 2) by unlawful threat of harm; 3) attempted; 4) to influence, intimidate or hinder; 5) the municipal court judge in the discharge of his duties.

**{¶31}** This court addressed the crime of intimidation in *State v. Hamilton,* 5th Dist. Richland No. 13CA93, 2014-Ohio-3171. In *Hamilton,* the defendant told a Richland County Sheriff's lieutenant that "if he got any charges out of this [possessing the cellular telephone] that he was going to make my life a living hell." *Id.* at ¶37. The defendant/appellant argued that the lieutenant's testimony was not sufficient to establish intimidation because he was not able to carry out his threat. This court stated:

"Notably, R.C. 2921.03(A) requires only an 'attempt' to influence, intimidate, or hinder; it is not necessary to establish that the officer was actually prevented from doing a particular task." *State v. Myers,* 3rd Dist. Henry No. 7–99–05, 2000–Ohio–1677, *1. Lieutenant Young testified he took the words to be a threat. T. at 214, 247–249. Lieutenant Young's wife is a sergeant and also works at the jail. T. at 230. We find appellant's statement to be sufficient to establish a threat against Lieutenant Young and the elements of intimidation.

*Id.*

{¶32} In this case, the appellant intended to influence the judge in the discharge of his duties as a municipal court judge through unlawful threat of harm. The appellant stated in his December 16, 2021 letter to the common pleas court judge that his purpose in sending the municipal court judge the December 1, 2021 letter was to "cause an outrage," and stated that he "… may as well piss him off so insanely much that we walks off/resigns from the cases himself!!"  The appellant knowingly attempted, through the unlawful threat of harm by immolation, to cause the judge to recuse himself from the appellant's case – influencing and otherwise hindering the judge from performing his duties as a municipal court judge. Unlike *Hamilton,* the appellant herein was successful in influencing, intimidating, or hindering a public official from the discharge of his duties. The municipal court judge was so fearful for his personal safety and the safety of his family and colleagues that he reported the letter to the authorities and recused himself, as well as his fellow municipal court judge, from the appellant's municipal court matter and asked the Supreme Court to appoint a visiting judge.

{¶33} The jury heard testimony from the judge, a representative of the clerk of court's office, and the deputy sheriff who investigated the matter, weighed the evidence, and ascertained the veracity of the witnesses. The jury's verdict on the charge of intimidation is supported by sufficient evidence. Furthermore, the jury's verdict on the charge of intimidation is not against the manifest weight of the evidence.

{¶34} In order to prevail at trial on the aggravated menacing charge, the appellee had to prove beyond a reasonable doubt that the appellant: 1) knowingly; 2) caused the judge to believe; 3) that the appellant would cause serious physical harm to the judge and/or a family member or colleague. The crime of aggravated menacing was discussed by the court in *State v. Keeney,* 4th Dist. Lawrence No. 08CA36, 2009-Ohio-3094:

> An essential element of the crime of aggravated menacing is that the victim believed that the offender would cause him or her serious physical harm. *State v. Manley,* Montgomery App. No. 20229, 2004–Ohio–4930, at ¶ 28.

> Conditional threats or future threats "can constitute a violation of menacing laws." *State v. Ali,* 154 Ohio App.3d 493, 797 N.E.2d 1019, 2003–Ohio–5150, at ¶ 26; *State v. Collie* (1996), 108 Ohio App.3d 580, 582–83, 671 N.E.2d 338. Thus, "menacing can encompass a present state of fear of bodily harm and a fear of bodily harm in the future." *Ali* at ¶ 26. The state need not "prove that the offender is able to carry out the threat or even that the offender intended to carry out the threat." *Id.* at ¶ 27, 797 N.E.2d 1019. The "sufficiency of the threat is a factual question reserved for the trier of fact." *Id.* at ¶ 28, 797 N.E.2d 1019, citing *Dayton v. Dunnigan* (1995), 103

Ohio App.3d 67, 71, 658 N.E.2d 806. Further, the victim's fear or belief may be demonstrated by circumstantial evidence as well as direct evidence. *Garfield Hts. v. Greer,* Cuyahoga App. No. 87078, 2006–Ohio–5936, at ¶¶ 8–9.

*Id.* at ¶11-12.

**{¶35}** In this case, the municipal court judge testified as follows:

Q:      What did you do, Judge, when you received this letter?

A:      Well, the tone was definitely different from the letters that I had gotten before. I had never been, you know, directly threatened with harm to me or my family, so at that point, after consulting with my staff, I made the decision to file a report with the Licking County Sheriff.

Q:      When you read that material in that letter, were you scared?

A:      Yeah. I mean, I was concerned for my safety.

Q:      And were you concerned for the safety of your family?

A:      Absolutely.

Q:      So you contacted the sheriff's office, made a report. Did you take any other steps or actions to address or to try to deal with those concerns for your safety and your family's safety?

A:      Well, I consulted with members of law enforcement that I know for any advice about things that we could – you know, to make me or my family safer. I brought my family together and sat them down and told them what had happened and that we needed to be very careful about paying attention to if there was anybody, you know, outside of the house parked on the

street, that the door needed to be locked at all times. My wife who has a

CCW permit, kind of gave me a tutorial on the use of a gun in case I needed

to defend myself or them.

Q:      Did you take those statements and those threats in that letter

seriously?

A:      Absolutely.

{¶36} A threat to cause another and/or his family acute pain and substantial suffering, or that involves any degree of prolonged or intractable pain or death, if believed, is sufficient to satisfy the aggravated menacing statute's requirement that a defendant's conduct cause the victim to believe that the defendant will cause the victim serious physical harm. In this case, the judge testified that he "absolutely" took the appellant's threats seriously, and that he feared for his safety and the safety of his family. Further, he took actions to protect himself and his family from the threat of harm. The trier of fact is charged with deciding whether a witness is credible, and what weight to give that witness's testimony. The jury in this case determined that there was sufficient evidence to establish beyond a reasonable doubt that the judge believed the appellant's threat to cause him and/or his family serious physical harm. The jury's verdict on the charge of aggravated menacing is supported by sufficient evidence. Furthermore, the jury's verdict on the charge of aggravated menacing is not against the manifest weight of the evidence.

{¶37} In order to prevail at trial on the retaliation charge, the appellee had to prove beyond a reasonable doubt that the appellant: 1) purposely; 2) through unlawful threat of harm to another; 3) retaliated; 4) against a public servant; 5) because the public servant discharged his duties. In this case, the appellant intended, through unlawful threat of harm

to the judge and his family, to retaliate against him because the judge discharged his duties in setting bail for the appellant in the underlying municipal court matter, a clear discharge of his duty as a municipal court judge.

**{¶38}** This court addressed retaliation in *State v. Baughman,* 5th Dist. Richland No. 01 CA 70, 2002-Ohio-4845. The defendant in *Baughman* was charged with, *inter alia*, retaliation in connection with letters written to the judge who had presided over his case and imposed sentence, as well as his former defense attorney.  The letter to the judge was degrading and derogatory, stating in part: "[t]he only thing that needs to cease and desist is your corruptions and ability to breathe [sic] …."  *Id.* at ¶31. The defendant's letters to his former defense counsel were also degrading and derogatory, and stated in part: "…Every day I wish on you an extremely violent, slow and torturous death. … Die, you b----h, death to you…." This court affirmed the retaliation convictions, holding:

> The jury had the letters before them and could judge for themselves whether they constituted a threat. Upon this court's review of the content of the letters, we cannot say that the jury's conclusions that appellant's letters constituted threats to Judge Franks and Attorney Rost were against the manifest weight of the evidence. We cannot say that the jury lost its way and created a manifest miscarriage of justice.

*Id.* at ¶40.

**{¶39}** In this case, the jury also had the appellant's letter before them. The jury was able to read the letter, listen to the judge's testimony, and to ascertain for themselves whether the letter constituted a threat.  Just as in *Baughman,* we cannot say that the jury's conclusions that the appellant's letter constituted a threat to the municipal court judge

were based upon insufficient evidence. Nor can we say that the jury's conclusions were against the manifest weight of the evidence or that the jury lost its way and created a manifest miscarriage of justice.

{¶40} After viewing the evidence in the light most favorable to the prosecution, we cannot say that no rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. Nor can we say that the jury clearly lost its way and created a manifest miscarriage of justice. Accordingly, we find that the appellant's convictions for intimidation, aggravated menacing, and retaliation were supported by sufficient evidence, and were not against the manifest weight of the evidence. The appellant's first and second assignments of error are therefore overruled.

## ASSIGNMENT OF ERROR NUMBER THREE

{¶41} The appellant argues in his third assignment of error that his trial counsel was ineffective because he failed to challenge the constitutionality of the statutes with which the appellant was charged as the statutes were applied to the appellant. We disagree.

### Standard of Review

{¶42} The standard of review for ineffective assistance of counsel was set forth in the seminal case of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and was discussed by this court in *Mansfield v. Studer,* 5th Dist. Richland Nos. 2011-CA-93 and 2011-CA-94, 2012-Ohio-4840:

> A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial

violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838 (1993); *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052(1984); *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance,* 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland v. Washington* 466 U.S. at 687, 104 S.Ct. at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland v. Washington* 466 U.S. at 688, 104 S.Ct. 2052 at 2065.

Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of

ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland v. Washington,* 466 U.S. 668 at 689,104 S.Ct. at 2064.

In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington,* 466 U.S. 668 at 689,104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington,* 466 U.S. 668 at 689,104 S.Ct. at 2064.

*Studer, supra,* at ¶¶ 58-61.

**{¶43}** Thus, in order to prevail on an ineffective assistance of counsel argument the appellant must show both: 1) that his trial counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of an essential duty to the appellant; and, 2) that the appellant was prejudiced by such the alleged ineffectiveness.

**Analysis**

**{¶44}** The appellant essentially argues that his trial counsel failed to sufficiently argue that the language contained in his letter was protected free speech. This argument must fail, however, because threats such as those made by the appellant are not protected speech.

**{¶45}** The court's analysis in *In re R.W.H.,* 2nd Dist. Montgomery No. 28880, 2021-Ohio-4024, is instructive. The appellant in *R.W.H.*, the appellant had lost permanent custody of his child. He argued that the trial court's permanent custody decision was affected by an alleged First Amendment violation when his visitation with the child was suspended following his criminal trespass against Montgomery County Children's Services ("MCCS") arising out of his "threatening statements of causing serious physical harm to MCCS employees." *Id.* at ¶86. In discussing the principles of free speech in its analysis of the father's claims, the court stated:

> "As a general rule, the First Amendment to the United States
> Constitution protects citizens from government actions that abridge free
> speech." *Puterbaugh v. Goodwill Industries of the Miami Valley, Inc.*, 2d
> Dist. Miami No. 2013-CA-39, 2014-Ohio-2208, ¶ 35, citing *Hudgens v.*
> *N.L.R.B.*, 424 U.S. 507, 513, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976). "The

right to free speech secured by the First Amendment is not absolute, however, and the government may regulate it in a manner that is consistent with the Constitution." *Bey v. Rasawehr*, 161 Ohio St.3d 79, 2020-Ohio-3301, 161 N.E.3d 529, ¶ 21, citing *Virginia v. Black*, 538 U.S. 343, 358, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003). "It has been recognized that threats which intimidate or cause fear or apprehension by the recipient are unprotected by the First Amendment." *State v. Myers*, 3d Dist. Henry No. 7-99-05, 2000 WL 327238, *3 (Mar. 30, 2000), citing *Dayton v. Dunnigan*, 103 Ohio App.3d 67, 71, 658 N.E.2d 806 (2d Dist.1995). (Other citations omitted.). Moreover, R.C. 2903.21, Ohio's aggravated menacing statute, criminalizes "knowingly caus[ing] another to believe that the offender will cause serious physical harm to the person or property of the other person." This court has held that "[t]he crime of aggravated menacing is triggered by a threat which intimidates or causes fear or apprehension by the recipient," and that "[s]uch threats are not among the class of utterances which are protected by the First Amendment." *Dunnigan* at 71.

(Emphasis added.) *Id.* at ¶85. *See, also, Dayton v. Dunnigan,* 103 Ohio App.3d 67, 71, 658 N.E.2d 806 (2nd Dist.1995).

**{¶46}** This classification of threats as unprotected speech applies to threats not only in the context of aggravated menacing, but also in the context of intimidation and retaliation. Ohio courts have recognized that threats which intimidate or cause fear or apprehension by the recipient are unprotected by the First Amendment. *See, In re R.W.H., supra;* and*, Dunnigan, supra.*

{¶47} Throughout the course of the trial court proceedings, the appellant's trial counsel argued that the language used by the appellant did not constitute a threat, but rather, was merely bluster. He further argued that the appellant's right to utter such words, albeit repugnant, was protected free speech. Thus, while he did not challenge the constitutionality of the criminal statutes as applied to the appellant, he did proffer the First Amendment free speech arguments.

{¶48} Furthermore, as set forth by this court in *Studer, supra,* "[t]o establish prejudice, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at ¶62. Although the appellant's trial counsel did not specifically challenge the constitutionality of the statutes in question as applied to the appellant, the appellant was not prejudiced by such inaction because the speech contained in his letter to the judge was not protected speech.

{¶49} Based upon the foregoing, we find that the appellant's third assignment of error regarding ineffective assistance of counsel to be without merit. Accordingly, appellant's third assignment of error is overruled.

## CONCLUSION

{¶50} The appellant's convictions for intimidation, aggravated menacing, and retaliation were supported by sufficient evidence, and were not against the manifest weight of the evidence. Furthermore, the threats contained in the appellant's letter to the municipal court judge were not protected speech, and his trial counsel was not ineffective in his representation of the appellant. The appellant's Assignments of Error Numbers 1, 2, and 3 are overruled, and the judgment of the Licking County Court of Common Pleas is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Wise, John, J. concur.